Benjamin F. Gould, Trustee, Alexander G. Ridgely, Elizabeth S. Rogers, and others *vs.* Philip S. Chappell, and Alexander Gould, Jun'r, acting Trustee. Same *vs.* Same.

*Trustees' Sales—Duties of Trustees—Distinction between Sales made by Trustees under a Decree of Court, and Trustees acting under a Deed or Will.*

By the will of a testator who died in the year 1859, a portion of his real estate was devised to trustees, who were directed to sell the same after the first day of January, 1870, either at public or private sale, in their discretion, and in such lots or parcels as they might deem best, the proceeds

Gould, Trustee, *et al. vs.* Chappell & Gould.

arising from said sale or sales to be distributed to certain persons named in the will. HELD:

1st. That the discretion thus reposed in the trustees was not a mere arbitrary discretion, but a discretion coupled with a trust, and to be exercised solely for the benefit of the *cestuis que trust.*

2nd. That it was their duty in making a sale of the property, to act in a prudent, and business-like manner, with a view to obtain as large a price, as might, with due diligence and attention, be fairly and reasonably obtainable under the circumstances.

3rd. That if such sale be made under circumstances of haste and imprudence, or if the trustees fail in reasonable diligence in inviting competition, or adopt an injudicious and disadvantageous mode of selling the property, a Court of Equity ought not to ratify the sale.

4th. That in the exercise of the discretion thus conferred upon them, it was the duty of the trustees to act in view of the circumstances existing at the time of the sale, and not as at the date of the will.

In the exercise of said power twenty acres of land lying within the limits of a growing and prosperous city, were sold as an entirety at private sale for the sum of $2500 per acre. No effort was made to sell either in building lots or by the front foot, although two of the principal business streets of the city, extended, passed through the property; and in addition to the testimony of witnesses that in their judgment this was the proper and judicious mode of selling the property, it was in proof that a tract of land adjoining and not appearing to be any more valuable, containing six acres, was sold by the front foot, within nine months after the sale made in this case, and brought over $5000, per acre. HELD:

1st. That the said property ought to have been sold, or at least offered for sale in building lots or by the front foot.

2nd. That the fact that the trustees were anxious to put money in the hands of some of the more needy of the *cestuis que trust,* was no excuse for adopting an injudicious and disadvantageous mode of selling the property.

It further appeared that by the contract of sale the purchaser was not to make the cash payment, nor were the credit payments to draw interest until the ratification of the sale. The sale was reported the 29th of August, 1872, exceptions to it were filed the 13th of September, 1872, but no steps were taken towards its ratification till November, 1873. During all this time the property remained in the hands of the trustees, and in the interval, from various causes, property in the neighborhood had greatly enhanced in

value; and the sale of certain property adjoining had established the fact that real estate in that locality was worth at least $5000 per acre. It was not until after this that an answer was filed to the exceptions to the sale, and the proof showed that the exceptions had not been pressed by the exceptants because they were under the impression that the sale had been abandoned. HELD:

1st. That in the sale of so large and valuable a tract of land, by the terms of which the purchaser was exempt from the payment of interest until the ratification of the sale, it was the duty of the trustees to have taken some steps towards its ratification.

2nd. That under all the circumstances surrounding the sale it ought not to be confirmed.

Where a sale is made under a decree of a Court prescribing the terms and conditions upon which the property is to be sold, and the trustee strictly complies with the same, the sale will not be set aside merely on the ground of inadequacy of price, unless it be so gross as to indicate some mistake or unfairness in the sale, for which the purchaser is responsible, or misconduct, or fraud in the trustee.

Where however a sale is made under a deed or will, and the trustee is clothed with large discretionary powers in regard to the time, manner and terms of sale, if he fail to exercise that caution and prudence which may fairly and reasonably be expected from a prudent owner in regard to the sale of his own property, and in consequence thereof the property is sold at a depreciated price a Court of Equity will not sanction such a sale, even though the conduct of the trustee may be untainted with fraud, and the purchaser be without fault.

APPEALS from the Circuit Court of Baltimore City.

On the 5th of August, 1872, Alexander Gould, Jr., Benjamin F. Gould, and William W. Gould, trustees under the will of their father, the late Alexander Gould, sold at private sale a parcel of ground belonging to the testator's estate, lying on the west side of Light street, in the City of Baltimore, containing about twenty acres, at $2500 an acre, to Philip S. Chappell. On the 29th of August the sale was reported, under oath, to the Circuit Court of Baltimore City, which had previously taken upon itself to superintend the conduct of the trustees, upon a

bill filed for that purpose, by some of the *cestuis que trust.* Exceptions were filed to the ratification of the sale by parties in interest.

The appeals in this case are taken from the order of the Circuit Court, passed on the 8th of March, 1875, finally ratifying the sale, as also from the subsequent order passed on the 22nd of March, 1875, modifying the previous order.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON and ROBINSON, J.

*J. Alexander Preston, Charles Marshall* and *Benjamin C. Presstman,* for the appellants.

*John P. Poe* and *John H. Thomas,* for the appellees.

ROBINSON, J., delivered the opinion of the Court.

After a careful consideration of this case, we are of opinion that the sale of the real estate mentioned in the proceedings ought not to be ratified. The sale was made by trustees under a power in the will of the late Alexander Gould, and reported to the Court below, in pursuance of the Act of 1870, chapter 370, which provides:

" No sale of real estate made by any trustee by virtue of any power or appointment contained in any deed or will, shall be valid, unless the same shall be confirmed by the Court, as in the case of sales made by trustees appointed by the Court."

By the terms of the will, the trustees therein named were directed to sell the real estate in question after the first day of January, 1870, either at public or private sale, in their discretion, and in such lots or parcels as they might deem best, the proceeds arising from said sale or sales to be distributed to certain persons named in the will.

The discretion thus reposed in the trustees was not *a mere arbitrary discretion*, but a discretion *coupled with a trust*, and to be exercised solely for the benefit of *the cestuis que trust*. It was their duty, therefore, in making a sale of the property to act in a *prudent and business-like manner*, with a view to obtain as large a price as might, with due diligence and attention, be fairly and reasonably obtainable under the circumstances. In other words, to exercise that diligence and caution which a careful and prudent owner would observe in the sale of his own property. If the sale be made under circumstances of haste and imprudence, or if the trustees fail in reasonable diligence in inviting competition, or adopt an injudicious and disadvantageous mode of selling the property, a Court of Equity ought not ratify the sale. *Ord vs. Noel*, 5 *Madd.*, 438; *Harper vs. Hayes*, 2 *Giff.*, 210; *Turner vs. Harvey, Jac.*, 178; *Bridger vs. Rice*, 1 *Jac. & Walk.*, 74; *Mortlock vs. Buller*, 10 *Ves.*, 292; *White vs. Cuddon*, 8 *Cl. & Fin.*, 766.

In the exercise of the discretion thus conferred upon them, it was the duty of the trustees to act in view of the circumstances existing at the time of the sale, and not at the date of the will. The will was admitted to probate in 1859, and the property was sold in 1872. We all know what a difference an interval of a few years makes in the value of unimproved real estate lying upon the outskirts of a growing city, and what might been a judicious mode of selling this property in 1859, may be an injudicious and disadvantageous mode in 1872, thirteen years afterwards. In this case, twenty acres of land lying within the limits of a growing and prosperous city, were sold as an *entirety* for the sum of *twenty-five hundred* dollars *per acre*. The trustees in their report say, they have frequently since the first of January, 1870, endeavored to sell the property in question at public and private sale, both in small and large parcels. The proof shows that the twenty acres were offered *once*

at public sale *as an entirety*, and that one of the trustees had offered the same to several purchasers of real estate at private sale, but *at prices* far in advance of what the tract was sold to the appellee.

It does not appear that any effort was made to sell so valuable a tract of land *either in building lots, or by the front foot*, although Charles and Hanover Streets extended, two of the principal business streets in the city, pass through the property. We are satisfied from the proof in the record, that this property ought to have been sold, or at least offered for sale, in building lots or by the front foot. In addition to the testimony of witnesses who say that in their judgment this was the proper and judicious mode of selling the property, we have the fact that a tract of land adjoining, known as The Methodist Graveyard, containing six acres, was sold by the front foot, *within nine months after the sale* made in this case and brought *over five thousand dollars per acre*. And it is doubtful, to say the least, whether it was intrinsically more valuable than the property sold by the trustees; one witness thinks there was perhaps four to five hundred dollars difference in favor of the Graveyard property.

The fact that the trustees were anxious to put money in the hands of some of the more needy *cestuis que trust*, is no excuse for adopting an injudicious and disadvantageous mode of selling the property. In *Ord vs. Noel*, 5 *Madd.*, 440, Sir JOHN LEACH said :

" Every trust deed for sale is upon the implied condition that the trustees will use all reasonable diligence to obtain the best price ; and that in the execution of their trusts, they will pay equal and fair attention to the interests of all parties concerned." In that case, the Court refused to enforce the contract of sale, because the trustee, influenced by the conduct of one of the creditors, who was anxious that money should at all events be immediately raised, adopted a disadvantageous mode of selling the entire property in one lot.

Then again, in this case, it appears by the contract of sale, the purchaser was not to make the cash payment, nor were the credit payments to draw interest until the ratification of the sale. The sale was reported August 29th, 1872, exceptions were filed to the same, September 23rd, following, and yet, no steps were taken towards its ratification until November, 1873, nor was the answer of the appellee, Chappell, to these exceptions filed until December following—more than sixteen months after the contract of sale was signed. During all this time, the property remained in the hands of the trustees, not yielding enough to pay even the taxes, and the appellee by the terms of the contract was released from all liability for interest on account of the purchase money. In this interval of time the proof shows that from various causes, not necessary to mention here, property in this neighborhood had greatly enhanced in value. The sale of the Graveyard property adjoining, established the fact, that real estate in that locality was worth at least five thousand dollars per acre. It was not until after the sale of this property, that the appellee filed his answer to the exceptions against the sale.

In the sale of so large and valuable a tract of land, by the terms of which the purchaser was exempt from payment of interest until the ratification of the sale, it was plainly the duty of the trustees to have taken some steps towards its ratification. The proof shows, the exceptions to the sale were not pressed by the exceptants because they were under the impression that the appellee had abandoned the sale. Mr. Sellman, who was a trustee for his wife, says, in a conversation with the appellee, he explained the grounds upon which the *cestuis que trust,* objected to the ratification of the sale, and told him, they were preparing a petition for a decree to sell the whole estate at auction, and the appellee replied, that if such "*was the case, he would withdraw.*"

This testimony is not only uncontradicted, but it is strongly corroborated by the fact, that Alexander Gould, Jr., one of the trustees now insisting upon the ratification of the sale, late in the year 1873, employed Mr. Bouldin to resurvey and plat the entire property, for the purpose of offering it at public sale in September.

Taking then all the facts and circumstances surrounding this sale into consideration, we are of opinion that it ought not to be confirmed.

Where a sale is made under a decree of a Court prescribing the terms and conditions upon which the property is to be sold, and the trustee strictly complies with the same, the sale will not be set aside *merely* on the ground of *inadequacy of price*, unless it be so gross, as to indicate some mistake or unfairness in the sale for which the purchaser is responsible, or misconduct, or fraud in the trustee.   *Johnson vs. Dorsey*, 7 *Gill*, 269.

Where, however, a sale is made under a deed or a will, and the trustee is clothed with large discretionary powers, in regard to the time, manner and terms of sale, such a sale being coupled with a trust, it is the duty of the trustee to bring the property to the hammer in a judicious and advantageous manner, and if he fail to exercise that caution and prudence which may fairly and reasonably be expected from a provident owner in regard to the sale of his own property, and in consequence thereof, the property is sold at a depreciated price, a Court of Equity will not sanction such a sale, even though the conduct of the trustee may be untainted with fraud, and the purchaser be without fault.

*Orders reversed, and*
*cause remanded.*

(Decided 3rd June, 1875.)