# BERTRON, STORRS AND GRISCOM vs. MARY E. POLK ET AL.

*Exceptions to Trustees' Sale of Property for Purpose of Re-Investment.*

Certain trustees under a will were authorized to sell any portion of the trust property and invest the proceeds in such bonds, mortgages or ground rents as they should deem judicious. The trustees reported to a Court of equity, in which the estate was being administered, a sale of a number of shares of gas stock, which had been held by the testator at the time of his death. The beneficiaries of the trust excepted to the sale upon the ground that the gas stock was a valuable investment, that large expenses would be incurred in making the proposed sale and re-investing the proceeds, and that the proceeds of the sale when invested in the securities designated in the will would produce a smaller income than it now yields. *Held*, that since the evidence shows that the gas stock is a valuable security and that the sale would not be for the advantage of the parties in interest, the same will not be ratified.

Appeal from the Circuit Court of Baltimore City (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, and SCHMUCKER, JJ.

*Leon Greenbaum* and *James McEvoy, Jr.,* for the appellants.

*James P. Gorter,* for the appellees.

BRISCOE, J., delivered the opinion of the Court.

The questions, in this case, are presented upon exceptions by the appellees to the sale of 930 shares of the capital stock of the Consolidated Gas Company of Baltimore City, belonging to the trust estate of the late Gabriel D. Clark and made by his trustees to the appellants.

Mr. Clark died in December, 1896, leaving a large and valuable estate, approximating in value nine hundred thousand dollars which he disposed of by a last will and testament.

The will was duly admitted to probate in the Orphans' Court of Baltimore City. Gabriel D. Clark, Jr., Helen A. Clark and the Mercantile Trust and Deposit Company of Baltimore, qualified as trustees, under the will.

By the thirteenth clause of the will, Mr. Clark created a trust estate "for the benefit of his daughter, Mary E. Polk, for life, remainder to her son, Gabriel D. Clark Polk for life, remainder to the children of Gabriel Clark Polk, until the youngest reached the age of twenty-one years, when the trust would cease, &c., &c."

The nine hundred and thirty shares of stock of the Gas Company, the property here in controversy, is a part of the trust estate and passed to the trustees, under the will upon the settlement of the personal estate, in the Orphans' Court of Baltimore City.

The stock was held by the trustees, and the amount of income thereon paid to the life tenants until the 29th of November, 1904, when it was sold to the appellants, subject to the approval of the Court, at $83 per share ex-dividend, and the sale duly ratified by the Court.

Subsequently and before the stock was transferred, on petition of Mary E. Polk and Gabriel Clark Polk, the two adult beneficiaries under the will, the order of Court of the 29th of November, 1904, ratifying the sale was rescinded and an order of ratification *nisi* was passed in the case.

Thereupon, exceptions to the sale as made by the trustees, were filed by the appellees.

The appellants then, intervened by petition, testimony was taken, the case heard, and from an order of the Court sustaining the exceptions to the sale, this appeal has been taken.

The exceptants object to the sale for the following reasons: 1st. The stock now yields annually the sum of $3,720 and is valuable stock purchased by the late Gabriel D. Clark in his lifetime.

2nd. That if the stock is sold the proceeds under the will can only be invested in bonds, mortgages, or ground rents, and it would be impossible for the proceeds to be invested in such a way, regard being had to security, as to yield an amount equal to the income from the stock. If the proceeds were invested in city stock, it would only yield the sum of $2,450.60. If invested in 3½ per cent ground rents, it would only yield $2,701.55.

3rd. That a very large part of the estate is in bonds and securities at a low rate of interest, and the petitioners are desirous that their income be not diminished by sales and re-investments.

4th. That large commissions and expenses will be incurred in making the sale and in re-investing the proceeds which should be avoided, and there is no occasion to incur this expense.

In answer to these objections, the appellants contend that the trustees under the will had full and ample power to sell the securities of the trust estate for the purposes of re-investment; that the sale was fairly made and they have acquired rights of which they ought not in justice and equity to be deprived by the vacation of the sale.

By the 13th article of Mr. Clark's will he authorized and empowered his trustees, at any time, during the continuance of the trust, created by his will, to sell, convey, transfer and assign any portion of his property, real or personal and to release any mortgage therein contained; the proceeds of such sales and releases to be invested and re-invested, in such

*bonds, mortgages* or *ground* rents as the trustees should deem judicious, and to be held by the trustees, in the same manner, and for the same purposes, as are provided by the will.

It is quite clear, we think, that the trustees had ample power, under the 13th clause of the will, to sell the property of the trust estate, for the purpose of re-investment, subject to the limitations of the trust, and subject to the approval of the Court, under whose jurisdiction, the trust estate, was being administered.

But the real question, here, is whether the sale of the property in controversy was properly made, and whether it was an advantageous one for the interest of all the beneficiaries, both life tenants, and the remaindermen.

Ordinarily, and as a general rule a Court of equity will give its sanction to a sale made by a trustee, in the exercise of a discretionary power conferred under a deed or will, if it is fairly and reasonably exercised, having regard to the interest and the character of the trust reposed in him.

In *Gould* v. *Chappell*, 42 Md. 466, it is said, where a sale is made under a deed or will, and the trustee is clothed with large discretionary powers  *  *  *  *  * such a sale being coupled with a trust, it is the duty of the trustee to bring the property to the market in a judicious and advantageous manner, and if he fails to exercise that caution and prudence which may fairly and reasonably be expected from a provident owner in regard to the sale of his own property, and in consequence thereof, the property is sold at a depreciated price, a Court of equity will not sanction such a sale, even though the conduct of the trustee may be untainted with fraud, and the purchaser be without fault.

In the case now before us, it appears that the sale is resisted by both Mrs. Polk, the life tenant, and Mr. Gabriel Clark Polk, the adult beneficiary after his mother's death.

It does not appear that they were consulted as to the advisability of the proposed sale, or in any way consented to it, but filed the exceptions herein set out, upon first having notice of the ratification of the sale by the Court.

It also appears that Mr. Clark, one of the trustees, who lived in New York did not sign the agreement to make the sale, and united in the report to the Court, under a misapprehension of the facts, and understood that the beneficiaries consented thereto.

The proof shows, that the stock was held by the testator, at the time of his death, and had paid 4 per cent on its par value $100 that is, the 930 shares had paid an annual income of $3,720, and at $83 per share would sell for $77,190.

By this will this large sum of money would have to be invested in bonds, mortgages or ground rents, and according to the testimony of all the witnesses, the income would be reduced, if invested in the class of securities, provided by the trust, independent of the loss to the *corpus* in commissions for sale, re-investments of the property, and loss of interest on account of delays incident thereto.

But apart from these considerations it is stated by the appellees in their brief that the stock was really purchasod by the appellants for $85.50 per share "because they paid the syndicate consisting of Messrs. Ober, Hambleton & Co., Townsend, Scott & Co., and Stein Bros. $2.50 per share commissions; have resold it at an advance on that price to others and the stock is now selling at $90 a share."

General Ferdinand C. Latrobe, the president of the Gas Company, testified that he thought the stock was worth the market value, 84½ bid, and in answer to the question, "How is the Gas Company getting along in its business generally?" replied, "doing very well, and the output is constantly increasing, I think, we have over seventy thousand consumers now."

Mr. Albert F. Claibaugh, a stock broker of thirty years experience, testified that he regarded the stock as a safe investment, and under the circumstances of the case would not advise a sale and re-investment of the proceeds.

While there is testimony on the part of the respondents as to the advisability of holding the stock as an investment by a trust estate, we do not deem it sufficient under all the facts and circumstances of the case, to hold that the sale as made

Md.]                                    Syllabus.

by the trustees, should receive the sanction of a Court of equity.

All the authorities concur, in holding that the sale must be for the advantage and interest of all the parties, under the trust and the discretion reposed in the trustee must be fairly and reasonably exercised. *Murray* v. *Feinour*, 2 Md. Chy. 418.

It cannot be disputed, that should the sale be sustained, the annual income of the life tenants, as well as the *corpus* of the estate, will be largely reduced.

The ratification of this sale is being opposed by the adult beneficiaries of the trust, and their descendants are those entitled in remainder.

The appellants who are seeking its ratification are interested in the profits to be derived from the sale, and can in no way be interested in protecting the trust estate.

Concurring with the Court below, in the order appealed from, it will be affirmed with costs.

*Order affirmed with costs.*

(Decided June 21st, 1905.)