(610 P.2d 1132)
No. 50,479

In The Matter of the Estate of J. McKinley Chestnut, Deceased

RICHARD CHESTNUT and BRUCE CHESTNUT, *Appellees,* v. MYRTLE COLLETTE STEWARD, WILBUR LYLE DUNN, ETHYL MARGARET COPELAND, DAVID L. DUNN, and NANCY DUNN HOSLER, *Appellants.*

Opinion filed May 9, 1980.

*Wayne W. Ryan* and *Tim W. Ryan,* of Ryan and Ryan, P.A., of Clay Center, for appellants.

*Frank D. Oberg* and *William M. Malcolm,* of Clay Center, for appellees.

Before ABBOTT, P.J., SWINEHART and MEYER, JJ.

MEYER, J.: This is an appeal from an order confirming the sales of various tracts of real estate of a decedent.

At issue here is the validity of deeds to five tracts of land. Four deeds are involved; two of them to the executors themselves, one to a former brother-in-law of the executors, and one to a neighbor of the executors.

Decedent's will contained a provision concerning the sale of property as follows:

> "I hereby direct that all of the remainder of my real estate and personal property be sold and converted into cash by my executors, hereinafter named, at the highest prices obtainable therefor, either at public or private sale, upon such terms and conditions, and at such times, as my executors shall deem best. I empower my executors to make, execute, acknowledge and deliver deeds, assignments and other written instruments conveying title to said real estate and personal property to the purchasers thereof, all without the intervention of the probate court."

The executors entered into written contracts for the private sale of these tracts to the persons mentioned aforesaid, and the contracts were made subject to approval by the district court of Clay County, Kansas. These contracts were entered into on March 3, 1978.

Decedent's will provided that 5 percent of the net estate was to go to a designated charity, 47½ percent was to go to decedent's relatives, and 47½ percent was to go to the relatives of decedent's predeceased wife (appellants herein). While decedent's relatives, in general, do not complain of the sales, appellants do not approve.

The issues raised by appellants herein can be summarized as follows: (1) that the sale of the real property was made more than six months after an appraisement of the real property sold; (2) that the executors did not exercise diligence in obtaining the best price for the real estate sold; (3) that there is a substantial conflict of interest pursuant to K.S.A. 59-1703 in the sale of the executors to one who is their former brother-in-law, and to another who is neighbor to the executors; and (4) that the district court erred in ordering the sale of the real estate upon terms different from those contained in the petition filed by the executors pursuant to K.S.A.

59-2303 in that K.S.A. 59-2304 provides that the order shall be within the terms of the application made by the petition.

With regard to the appraisement issue, the pertinent dates are that the testator died August 8, 1977, and the executors entered into their written contracts for sale on March 3, 1978. Although the appraisement was made in January, 1978, the appraisal contained the statement that the values therein were as of the decedent's death. Appellees contend that since the appraisement was made and dated less than six months before March 3, 1978, that same complies with the statutory requirement that real estate be appraised within six months prior to sale.

K.S.A. 59-2307 states that:

"Before any representative shall sell or lease any real estate at private sale, such real estate shall be appraised at its full and fair value by one or more, but not to exceed three (3), disinterested persons named by the representative, to be approved by the court unless good cause is shown to the court why the named appraisers should not be approved. *Such appraisal shall be within the time period prescribed by subsection (e) of K.S.A. 59-2305.*" (Emphasis added.)

Subsection *(e)* of K.S.A. 59-2305 provides as follows:

"An order for sale, lease or mortgage shall remain in force until terminated by the court, but no private sale or lease shall be made unless the real estate or the leasehold interest therein shall have been appraised or reappraised within six months preceding the sale or lease."

In the instant case, not only did the report of the appraisers disclose that their valuation was as of the date of decedent's death, but K.S.A. 59-1201 provides in part that "every representative shall make an inventory stating opposite each item contained in the inventory the full and fair value as of the date of death of the decedent . . . ."

The appraisement required by K.S.A. 59-2307 must reflect the value of the property at a time within six months prior to sale. To hold that the statutes mentioned above require only that the date of an appraisal be within six months, while its terms would state an earlier valuation, would be to defeat the effect and force of the statute. Hence, we hold that the appraisal in the instant case was not made within six months prior to the sale of the real estate within the meaning of K.S.A. 59-2305(*e*).

The second assertion of appellant was that the executors did not exercise due diligence in obtaining the highest and best price obtainable.

The trial court approved the contracts of sale to the persons who were not executors, and as for the tracts which the executors themselves proposed to purchase, the court ordered that an "upset sale" be held, with the executors allowed to bid $1 more than the price for which any offeror proposed to purchase the land.

Sales by executors to themselves have never been favorites of Kansas law, and indeed until recent years have been forbidden. The statute was amended in 1975 to permit such sales with court approval. K.S.A. 59-1703.

While Kansas seems not to have addressed this specific question with regard to price, it is clear that:

"An administrator of an estate acts in a fiduciary capacity, and has a duty to exercise the utmost good faith in all of his transactions affecting the estate." *In re Estate of Lohse v. Rubow,* 207 Kan. 36, Syl. ¶ 1, 483 P.2d 1048 (1971).

In *Stump v. Flint,* 195 Kan. 2, 402 P.2d 794 (1965), the executor had the power to sell property for the best price obtainable, such power being granted by the will. The executor sold decedent's one-half interest in the real estate for $30,000. The trial court found the executor acted in good faith and that the sale was bona fide. The appellate court found the trial court's findings were supported by substantial competent evidence. The court noted that while the contract for sale was $3,200 less than the appraised value, the executor saved the cost of commission by selling to a third party. There were no offers of purchase *and the executor had talked to many people about selling the property.* Further, there was independent evidence that $30,000 was a fair price.

The instant case, however, can be distinguished from *Stump v. Flint* in that here the only inquiries made by the executors were to the two purchasers and to one Myrtle Steward and her husband. The executors did not advertise the property in the paper. Further, there was evidence that Ted Volen, a farmer in the vicinity of the estate, went to the office of the attorney for the estate on March 2, 1978, and offered an amount in the $50,000's for a tract appraised at $47,000. That particular tract eventually was sold to the executor Richard Chestnut at the price of $47,000. There was also evidence presented at trial of many other prospective purchasers who were interested in the property and who would pay more than the appraised value. In fact, Myrtle Steward had informed the executor's attorney that Gary Case was interested in

purchasing the property, yet he was not contacted by the executors.

Other jurisdictions have indicated that the fiduciary has a duty to sell the assets of an estate for the best price that can reasonably be obtained. The best test of this is the market. See *State v. Hartman,* 54 Wis. 2d 47, 194 N.W.2d 653 (1972), where the court noted that while appraised value would be a factor in determining the propriety of a transaction, it was not determinative. In the absence of evidence to show that there had been a reasonable attempt to sell the property and that the appraised value was a proper sale price, a sale to the executor's wife was found to be an exercise of the power of sale in bad faith.

The same rule was followed in *Helgesson v. Frank,* 17 Or. App. 133, 139, 521 P.2d 16 (1974), wherein it was stated:

"[T]he personal representative is a fiduciary and is under a duty to administer the estate 'with as little sacrifice of value as is reasonable under the circumstances.' ORS 114.265. As such a fiduciary, the personal representative has a duty, if a sale is in the best interests of the estate, to sell the estate assets for the best price that can reasonably be obtained in the market at that time. [Citations omitted.]"

In Maryland, the standard is that diligence and caution which a careful and prudent owner would observe in the sale of his own property.

In *Feldman v. Feldman,* 234 Md. 173, 176-7, 198 A.2d 257 (1964), the rule governing the duty of a fiduciary in selling property of a testator under a testamentary power of sale was stated as follows:

" 'The discretion [to sell property at a public or private sale] thus reposed in the trustees was not a *mere arbitrary discretion,* but a discretion *coupled with a trust,* and to be exercised solely for the benefit of *the cestuis que trust.* It was their duty, therefore, in making a sale of the property to act in a *prudent and business-like manner,* with a view to obtain as large a price as might, with due diligence and attention, be fairly and reasonably obtainable under the circumstances. In other words, to exercise that diligence and caution which a careful and prudent owner would observe in the sale of his own property. If the sale be made under circumstances of haste and imprudence, or if the trustees fail in reasonable diligence in inviting competition, or adopt an injudicious and disadvantageous mode of selling the property, a Court of Equity ought not to ratify the sale.***' (Emphasis in the original.)" (Citing from *Gould v. Chappell,* 42 Md. 466, 470 [1875].)

The *Feldman* case had a fact situation similar to the case at bar. There the executor arranged a sale of property to his nephew for $2,500. The appellant, one of the beneficiaries named in the will,

filed an exception to the proposed sale. There was filed as an exhibit a written offer to purchase the lot in question for $3,500. The appraised value of the property was $2,000.

The court noted the general rule that "if a fiduciary acting diligently and without fraud accepts an offer at private sale for the most that he is able to obtain for the property at the time, and reports that offer to the court, it will not be set aside merely because someone else is later willing to give more for the property." 234 Md. at 177.

The court in *Feldman* went on to state that in the case before it, the executor did nothing other than to contact the two prospects mentioned by his brother. In addition, there was no evidence that the executor made any effort at all to obtain a higher price than that offered by his nephew. The court held that since the executor did not act in a prudent, diligent and businesslike manner, in order to obtain as large a price as might fairly be obtainable, the order appealed from was reversed and the case was remanded for an order setting aside the sale to the nephew.

We conclude that the evidence indicates that the executor did not act in a prudent, diligent and businesslike manner, in order to obtain the best price.

A portion of the court's Order Regarding Confirmation of Sales is as follows:

"The Court hereby makes Findings of Fact as follows:

"1.   The executors failed to compile an inventory within thirty (30) days of their appointment. The executors' appointment occurred on September 6, 1977, and the inventory was filed on March 3, 1978. The executors likewise failed to file the appraisement until March 3, 1978, more than thirty (30) days after the confirmation of the appointment of the appraisers on January 27, 1978.

"2.   March 1, 1978, Myrtle Steward and Ethyl Copeland, two of the opposing beneficiaries, went to Mr. Oberg's office and inquired about the status of the estate, at which time they were given general information by Mr. Oberg, and were advised by him, amongst other things, that the executors were going to sell the land.

"3.   March 2, 1978, Ted Volen, a farmer in the vicinity of the estate land, went to Mr. Oberg's office, told him 'he was interested in the 80 which was appraised at $47,000.00, and that he would pay in the 50-thousands for it.'

"Mr. Volen's advising Mr. Oberg that he would pay in the 50-thousands occurred prior to the signing of the Agreements (March 3, 1978), containing terms of sale of real estate, same being the Agreements the Court is now being asked to approve.

"4.   Respondents had all the real estate viewed by R. Stanley Parsons, a licensed broker, whose sworn testimony revealed he had been an appraiser and

Manager of the Federal Land Bank Office in Manhattan, Kansas, Clay County, Kansas, having been in the Manhattan, Kansas, office territory for the past seventeen (17) years. Mr. Parsons' summary report was introduced into evidence as Respondents' Exhibit "B" and reflects appraisals in excess of the appraisers' values.

"5.   The sworn testimony of the following positive statements and the ability to carry out their offer to purchase said real estate was:

"TED VOLEN would purchase and pay for Tract "A"
(app. at $47,000.00)

$64,000.00

"GARY CASE would purchase and pay for Tract "B"
(app. at $71,500.00)

$82,500.00

"FORREST STEWART would purchase and pay for Tract "C"
(app. $73,500.00)

$83,000.00

"ARLEN CARPENTER would purchase and pay for Tract "D"
(app. at $72,000.00)

$85,000.00

"M. W. GILMORE (agreed by parties) would purchase and pay for Tract "E"
(app. at $46,000.00)

$52,000.00

"the total increase in sale price above the proposed sales the executors are asking the Court to approve, being the sum of $56,500.00, and the increase over the appraised values being the sum of $58,500.00.

"The evidence offered by the petitioners-executors which the Court adopts as its Findings of Fact can be summarized as follows:

"1.   The named beneficiaries of the J. McKinley Chestnut will who are brothers and a sister of the deceased, namely James W. Chestnut, William B. Chestnut, Sr., Joseph B. Chestnut and Mary Rosetta Wynne, all are in complete agreement with the sales as proposed by the executors and urge a confirmation of the sales as sought by the executors.

"2.   After the appointment of the executors the executors made only limited personal contact with prospective purchasers. Executor Bruce Chestnut contacted Myrtle Collette Steward and her husband who indicated to Bruce Chestnut they were not interested in the purchase of any of the tracts in question because of the price of cattle at the time.

"3.   The executors determined that during the fall of 1977 the price of land in the area was in a slump and decided not to sell the land immediately. Further, at that time the executors were uncertain as to how they were to sell the land.

"4.   The executors were of the opinion that the decedent would not be in favor of a public sale and determined that the payment of a substantial commission and expense could be effected by a private sale. The executors possess a general knowledge of values of land in the area and believe appraisal was fair market value subject to adjustments made by them when sales contracts [were] executed.

"5.   The executors did negotiate with purchasers Russell James and Arthur Fowles and obtained as much or more than the appraised values for the tracts purchased by James and Fowles, as well as the tracts purchased by the executors.

Pending a confirmation of the sale the executors entered into lease agreements to insure the optimum return on the land.

"6. The executors were personally uninformed as to the procedural require-ments as to the filing of the Inventory and Appraisement and relied upon their attorney's direction in that regard. The executors state that due to the extent of the estate involved herein the delay in filing the Inventory and Appraisement was due in part to that fact.

"It is the Judgment of the Court that the following Conclusions of Law are controlling herein:

. . . .

"3. A fiduciary who proposes the purchase of property of an estate for himself and seeks an order of the Court confirming the proposed sale of said property pursuant to K.S.A. 59-1703 has the burden of showing that the proposed purchase of estate property by the fiduciary is for the highest and best price obtainable and is to be sold on terms most advantageous to the estate and all the beneficiaries thereof.

"While speculative evidence alone as to higher value and offers by interested parties should not preclude the Court from approving a fiduciary's proposed purchase of estate property, competent evidence of the property having the capabilities of bringing a greater value when coupled with firm offers substan-tially in excess of the fiduciary's proposed offer when coupled with a finding that only limited efforts were made by the fiduciary to find prospective purchasers precludes the Court from approving a sale to a fiduciary without further opportu-nity for prospective purchasers to submit bids."

We get the definite implication by the above excerpts of the trial court's order and particularly from item 3 under what the court calls its conclusions of law, that the court feels when a fiduciary purchases the property that he must obtain for it the "highest and best price obtainable and is to be sold on terms most advan-tageous to the estate and all the beneficiaries thereof." We con-clude the competent evidence referred to by the trial court which precluded the court from approving the sales to the fiduciary are applicable to all sales under a will such as we have here where the decedent directed that the property be sold for "the highest prices obtainable therefor, either at public or private sale."

We have carefully studied the entire court order in this matter together with the transcript of the hearing giving rise to it. In accepting the findings of fact as stated by the trial court, we conclude that the court made several errors in applying the law to these facts. We note that the testimony of the brothers and sisters of the decedent as to what the decedent wanted, that he did not like public sales, that he wanted the executors to have first choice of the land, and so forth, were entirely irrelevant in this case and should not have been admitted into evidence.

"Where a court, either trial or appellate, is called upon to determine the force and effect to be given the terms of a will, its first duty is to survey the instrument in its entirety and ascertain whether its language is so indefinite and uncertain as to require the employment of rules of judicial construction to determine its force and effect; and where from an analysis of the entire instrument no ambiguity or uncertainty is to be found in its language, the intention of the testator being clearly and unequivocally expressed, there is no occasion to employ rules of judicial construction and the will must be enforced in accordance with its terms and provisions." *In re Estate of Wernet,* 226 Kan. 97, Syl. ¶ 1, 596 P.2d 137 (1979).

The appellants objected at every crucial stage while this testimony was being admitted, and they have properly saved the matter for a determination by this court on appeal. The will in this case, and particularly item 2 thereof which is the only portion of the will relevant to these sales, is not ambiguous. Therefore, evidence that the decedent did not want a public sale is entirely irrelevant since the decedent in his will stated that same might be sold at public or private sale. The evidence which the trial court admitted to the effect that the testator wanted the executors to have first option to buy, is also irrelevant. The testator did not, by his will, prefer these executors. They were not named as beneficiaries in his will. They were not given an option to purchase in the will. There was thus no legal right whatever to prefer these executors in this matter. The court's reasoning comes to light by a remark made by the court as follows:

"[I]f someone dies owning land and that family and particularly if it's rural property, that family ordinarily does a number of things. First, they try to keep that land in the family by offering it to members of the family that are farming in and about that. Secondly, they offer it to the tenant and then they put it on the market for others to buy. . . ."

The will contains no language to support a finding that the family was to be preferred, that a tenant should be preferred, or for that matter, that anyone should be preferred when it came to purchasing this real property. If the testator had intended these persons to be preferred, he could have so indicated in his will. Instead, he directed the executors to sell for the highest and best prices obtainable.

The executors, according to the trial court's finding, used only a minimum of effort to obtain the highest price in this case. To say that the executors used minimum effort is the best that can be said of their efforts. They contacted no one other than the purchasers who ended up with agreements to purchase this land, other than for their visit with Myrtle Steward about it.

The trial court uses good reasoning when it states that subsequent offers might always be received, and might in effect prolong the sale process unreasonably. However, here it should be noted that this was not a case of repeated later offers. Rather this was the first opportunity for people to make meaningful bids on this property. Thus, the findings of the trial court of various offers made totaling $56,500 more than the executors' proposed sales, are most relevant to the legal conclusion of lack of diligence on the part of the testators.

It is obvious that the trial court found the executors' original purchase prices in the deeds to themselves were suspect. The executors' own testimony established that the reason they did not sell the property immediately was because there was a slump in the real estate market. Yet, it was at or near this appraised price that the properties were sold. Having found that the price offered by the executors in their contract was subject to question, the trial court was correct in ordering the executors to advertise for bids. However, when he authorized the executors to purchase those tracts of real property at a figure of only $1 in excess of the highest bids received, he created error in two respects. First, such an order (*i.e.*, allowing the executors to upset the bid by bidding $1 more) would act as a deterrent to potential bidders, and second, it put the executors in a favored position as to potential purchasers of the property. This we view as an abuse of discretion.

The combination of the irregularities in this matter, that is, (1) failure to appraise within six months of sale; (2) the virtual absence of attempts to sell to bona fide purchasers; and (3) the upset bid procedure discouraging bids and favoring the executors, requires us to reverse the trial court in this case.

We conclude the first two reasons are sufficient to set aside the deeds to the former brother-in-law and to the neighbor of the executors, and that all three operate to invalidate the deeds to the executors themselves.

We conclude that this matter must be returned to the district court for proceedings to sell the real estate of decedent to the highest and best bidders under direction of the court.

Reversed and remanded with instructions.