No. 80,672

In the Matter of RONALD D. BARTA, *Respondent.*

(962 P.2d 532)

Opinion filed July 10, 1998.

*Stanton A. Hazlett,* disciplinary administrator, argued the cause, and *Marty M. Snyder,* deputy disciplinary administrator, was on the formal complaint for petitioner.

*Jack Focht,* of Foulston & Siefkin, L.L.P., of Wichita, argued the cause for respondent, and *Ronald D. Barta,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Ronald D. Barta of Salina, Kansas, an attorney licensed to practice law in the state of Kansas. The hearing panel found violations of MRPC 1.15 (1997 Kan. Ct. R. Annot. 316) (Safekeeping of Property) and MRPC 1.5(b) (1997 Kan. Ct. R. Annot. 289) (Failure to Communicate on Fees). The panel recommended that respondent be suspended from the practice of law for 1 year. Respondent has filed no exceptions to the findings or conclusions of the panel, but requests imposition of less severe discipline.

The facts may be summarized as follows. For many years, respondent represented Mr. and Mrs. William Just, Oklahoma residents, in connection with several lawsuits concerning a Manhattan, Kansas, residential property. In March 1993, the Justs delivered $20,000 to respondent to hold for them and make bank payments as they came due. Respondent placed the funds in his trust account. In multiple transactions over a period of time, respondent took funds from the account to pay his attorney fees, expenses claimed incurred in the Just representation, and payment of a bank loan on respondent's law building. The bank payments the Justs authorized were remitted in a timely manner, but on one occasion respondent had to place $1,700 of his own funds in the account to cover an overdraft.

This matter came to the attention of the Disciplinary Administrator through a complaint filed by a former secretary of respondent who was unhappy with respondent's handling of her legal affairs. (The panel found insufficient evidence to support the secretary's claims of wrongdoing relative to her affairs.)

The panel specifically found:

"13. In March of 1996, Respondent Barta drove to Yukon, Oklahoma, the residence of the Justs and advised Mr. & Mrs. Just that he had paid his firm attorney fees out of their trust funds without their authorization in the total sum of $10,074.00. Respondent apologized to the Justs and advised them that he would see that all payments that were due the Sylvan State Bank were paid and that his fees for the handling of ten lawsuits over an eleven year period would be paid out of the proceeds when the sale of the residential property in Manhattan was made. The Justs have never filed a complaint against Mr. Barta and respondent's handling of the trust funds [has] never cost the Justs any loss.

. . . .

"18. Respondent testified at the August 18, 1997 hearing [and] admitted using the funds in the firm trust account to cover operating expenses and attorney's fees which he subsequently realized was not the proper thing to do. He testified that he had not had a fee agreement with the Justs all the years that he had been representing them, neither written nor oral and that was one of his reasons for his trip to Yukon, Oklahoma in March of 1996 (which was after the complaint had been filed and investigation started), to apologize to the Justs, to advise them that he had taken fees out of their trust funds, to assure them that he would see that any payments made on the bank loan with the Sylvan State Bank would be made and that ultimately his fees would be paid out of proceeds from the sale of the house in Manhattan."

The panel applied the ABA Standards on aggravation and mitigation. Aggravating factors included three prior contacts with the Disciplinary Administrator's office which resulted in informal admonition. One of the three arose from "sloppy handling of his trust account." The panel further found a pattern of misconduct and multiple offenses to the extent several improper withdrawals of the Justs' funds occurred over a period of time. The panel further found respondent "cooperated with the investigator [and] has acknowledged the wrongfulness of his taking fees and expenses out of the Just funds without having a fee agreement."

We have reviewed the record and conclude the panel's factual findings and conclusions of law are supported by clear and con-

vincing evidence. We agree with the following analysis by the panel:

"The panel examined the ABA Standards 4.1 Failure to Preserve the Client's Property and particularly 4.12 which advises suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with a client's property and causes injury or potential injury to a client. In this case Respondent should have known that it was improper for him to take fees out of the Just trust money without their consent or knowledge and Respondent has admitted that he committed a wrong. It is also inappropriate that the Respondent relied upon his office help to know the status of his trust account and in failing to require that the trust account be reconciled promptly. In this particular case, no injury was caused but there was a potential to cause injury by the Respondent handling of the Just trust funds."

An attorney's improper handling of a client's property is an extremely serious ethical violation. The panel noted respondent's caseload is 180 to 200 cases, primarily consisting of personal injury and workers compensation cases. His trust account, accordingly, has many entries. Respondent, apparently, made no effort to reconcile the trust account. At the time of oral argument before this court, respondent's counsel urged us to give respondent the opportunity to prove he has his "house in order."

A minority of the court would accept the panel's recommendation and suspend the respondent from the practice of law for a period of 1 year. The majority of the court is willing to give respondent the opportunity his counsel requests and concludes that the imposition of discipline should be suspended for a period not to exceed 2 years under the following conditions:

The Disciplinary Administrator is directed forthwith to provide respondent with a written statement setting forth specific requirements whereby respondent is to make monthly submissions to the Disciplinary Administrator's office of all trust account activity, bank statements, and such additional information as may be requested. An audit of the account at respondent's expense should be required at least at the end of the first year, but may be required earlier if circumstances warrant. If respondent should fail to comply with all requirements, and/or further ethical violations surface, the Disciplinary Administrator is directed to seek the issuance of a show

cause order to respondent as to why discipline should not be summarily imposed.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that this order shall be published in the official Kansas Reports and that the costs of the proceedings be assessed to respondent.