No. 83,685

In the Matter of RONALD D. BARTA, *Respondent.*

(996 P.2d 317)

Opinion filed January 28, 2000.

*Edwin A. Van Petten,* deputy disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*Stephen M. Joseph,* argued the cause for respondent, and *Ronald D. Barta,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Ronald D. Barta of Salina, an attorney admitted to the practice of law in the state of Kansas. Two complaints were heard by the panel. On each complaint, the panel concluded respondent had violated KRPC 1.3 (1999 Kan. Ct. R. Annot. 294) (lack of diligence) and KRPC 1.4 (1999 Kan. Ct. R. Annot. 303) (failure to communicate). The panel recommends a one-year suspension of discipline with probation under certain specified terms.

The complaints were heard by the panel on stipulated facts reproduced in pertinent part as follows.

### "COUNT 1 - A7134

"2.  Complainant, Gerald E. Brown was injured in a job related injury in January, 1995. On February 1, 1995, an Employment Agreement was signed with the respondent in which respondent agreed to represent the complainant in his worker's compensation claim.

"3.  Respondent timely advised the employer of the claim and his representation of the complainant. He also immediately requested employment and medical information.

"4.  In April, 1995, the deposition of complainant was taken and in March and July, respondent wrote to the treating physician requesting a disability determination. He was informed later in July that such a determination would be premature at that time. Respondent was informed, at that time, by the treating physician that a determination could not be made for at least six months. Respondent returned the file to his filing system, in the belief that receipt of a doctor's report would trigger its retrieval. No additional mechanism was put in place, in the event a report was not received within the expected time.

"5. The file remained in respondent's filing system without further action to resolve the merits of complainant's claim for a period of approximately two (2) years, and in June, 1997, complainant filed this disciplinary complaint because he could not get a response from the respondent, in 1997, despite periodically dropping off medical bills he was receiving and attempting to discuss creditor's contacts with the respondent. In response to a letter from the Office of the Disciplinary Administrator of July 2, 1997, respondent sent correspondence to the creditor involved on July 29, with a copy of that letter to the Office of the Disciplinary Administrator as his response to inquiry from this office. The July 29, letter was in response to complainant's January, 1997, contact with respondent's office.

"6. The Office of Disciplinary Administrator requested additional information regarding the lack of communication and lack of diligence issues, however, respondent has never responded to that inquiry.

"7. In the course of the investigation respondent met with the investigator in February 1998, and agreed to furnish records indicating activity in the file from July, 1995, to July, 1997. No additional response was received from the respondent despite requests from the investigator. The information requested was not available, as the respondent had no time records on this matter.

"8. Based upon the above facts, the respondent is in violation of Model Rules of Professional Conduct 1.3 for lack of due diligence in pursuing the representation and MRPC 1.4 for failure to communicate with his client regarding the pending representation."

### "COUNT II - DA7277

"9. Respondent was retained by the complainant, Susan Grillo, on February 19, 1998, for representation in two (2) matters. The first being a child support increase, the second, a bankruptcy.

"10. The child support matter was handled reasonably expeditiously and is not at issue in this matter.

"11.. Complainant continued to be contacted by creditors, and on March 12, 1998, signed the necessary documents for filing a bankruptcy. The contacts continued, however, the [complainant] was assured by respondent that all documents were filed and an automatic stay would take effect. She was also informed not to pay any of her bills. The respondent was operating under the belief that the petition and schedules had been filed, and that they were simply waiting for confirmation of that fact, and the notice of setting for a section 341 hearing.

"12. On May 12, 1998, complainant appeared at the office of respondent, at which time respondent went to her file and found the original bankruptcy papers still there. Respondent blamed the lack of filing on a secretary. It was obvious at that point that wrong information had been delivered to the client over the course of the representation.

"13. Apparently, at that time, a full refund of all fees paid for the bankruptcy proceeding was made, as well as a partial refund of the child support issue as it was an uncontested matter.

"14.   Based upon the above facts the respondent is in violation of Model Rules of Professional Conduct 1.3 for lack of diligence in the representation and obtaining the proper filing and automatic stay in the bankruptcy in which he agreed to represent the complainant and MRPC 1.4 for his failure to fully communicate with the client regarding the status of the bankruptcy.

"15.   The parties stipulate that the facts set forth above show clear and convincing evidence of the violations set forth therein, consisting of a violation of MRPC 1.3 and 1.4, in Count I; and a violation of MRPC 1.3 and 1.4 in Count II.

"16.   The parties agree that the above stipulations may be accepted as fact by the hearing panel for the purposes of the hearing in this matter, without the taking of additional evidence."

## The panel found and concluded as follows:

### "FINDINGS OF FACT

"The panel accepts the joint stipulation, Exhibit 1, is hereby incorporated by reference to set forth the facts in this case. The facts are set forth in Paragraphs 1, 2, 3, 5, 6, 7, 9, 10, 11, 12, 13 and 16 of Exhibit 1. In addition, respondent advised that he had purchased software computer equipment to handle calendaring and docketing events and since inaugurating this has not had any difficulty with things "falling through the cracks." Further, he is reducing the size of his case inventory and currently handles 60 files.

### "CONCLUSIONS OF LAW

"As per the stipulation in Paragraphs 8, 14 and 15, the panel concludes that the respondent is in violation of the models rules of professional conduct as set forth in Paragraphs 8, 14 and 15 of Exhibit 1.

"Specifically, respondent is in violation of MRPC 1.3 for lack of due diligence in pursuing representation of complainant Gerald E. Brown.

"The respondent is in violation of MRPC 1.4 for failure to communicate with his client, Gerald E. Brown, regarding the pending representation.

"The respondent is in violation of MRPC 1.3 for lack of diligence in the representation and obtaining the proper filing and automatic stay in bankruptcy for which he agreed to represent complainant Susan Grillo.

"Respondent is in violation of MRPC 1.4 for his failure to fully communicate with his client, Susan Grillo, regarding the status of the bankruptcy matter.

### "FACTORS IN AGGRAVATION

"A.   Prior Disciplinary Offenses;
"C.   A pattern of misconduct;
"D.   Multiple Offenses;
"I.   Substantial experience in the practice of law.

### "FACTORS IN MITIGATION

"B.   Absence of a Dishonest or selfish motive;

"E.   The present and past attitude of the attorney as shown by his cooperation during the hearing and his full and free acknowledgment of the transgression.

"G.   Previous good character and reputation in the community. . . .

"K.   Imposition of other penalties or sanctions."

For its recommended discipline, the panel states as follows:

## "RECOMMENDED DISCIPLINE

"The [panel] notes that Mr. Barta was the subject of a proceeding and discipline which is reported at 265 Kan. 762, which opinion was filed July 10, 1998.

"At that time, the Supreme Court entered a two year suspension of discipline and set forth a condition whereby the respondent is to make monthly submissions to the Disciplinary Administrator's office of all trust account activity, bank statements and any other material that might be requested. Further, the respondent is to provide an audit of his trust account at respondent's expense by the end of the first year.

"According to the Disciplinary administrator, Mr Barta is complying with his conditions set forth in that hearing and, in fact, there have been no complaints whatsoever. It is significant to the panel that the complaints dealt with in the instant matter were complaints involving the same time frame as the complaint addressed in 265 Kan. 762.

"In light of the prior Supreme Court ruling, and in light of the fact that the time frame involving the current complaints are similar, and in light of the fact that the panel finds the violations to be less serious than the ones reported previously, the Disciplinary Panel makes the following recommendations for discipline:

"1.   One year of suspension of discipline to follow the previously imposed two years of suspension of discipline set forth in the prior opinion referred to above.

"2.   The respondent is to immediately proceed with a plan of probation as follows:

"Part A - Mr. Barta will engage and pay attorney Charles E. Millsap, Wichita, Kansas to audit Mr. Barta's files four times over the next 20 months as follows: The first audit to be within 60 days; the second audit is to be 6 months after the first audit; the third audit is to be 6 months after the second audit; and the fourth audit is to be 6 months after the third audit.

"Part B - Mr. Millsap has agreed to perform these audits and will file a report with the Disciplinary Administrator after each of the audits and that report will expose violations of the Model Rules of Professional Conduct revealed in the audit.

"Part C - Within 60 days after the plan of probation is approved, Mr. Barta will file with the Disciplinary Administrator a written procedure adopted by him for use in his office to monitor the status of all matters in which he has accepted engagement and to docket all due dates and all follow-up dates. Mr. Barta will modify that procedure, if directed to do so by the Disciplinary Administrator, and will adhere to that plan in his office policy.

"Costs are assessed against respondent in an amount to be certified by the Disciplinary Administrator."

No exceptions to the panel's Final Hearing Report have been filed. The panel's findings of fact, conclusions of law, and recommended discipline are accepted by the court with minor modification of the probationary terms. The court notes the first audit has been received and no objection thereto has been filed by the Disciplinary Administrator.

It is clear that the panel intends and the parties accept that some of the new terms of probation should be engrafted upon the respondent's present probation ordered in *In re Barta*, 265 Kan. 762, 962 P.2d 532 (1998), as the required audit period commences prior to the commencement of the probationary period herein. As noted, the first audit report has already been received. Although somewhat unusual, it would seem appropriate to make the two probationary periods consistent and in harmony with each other.

IT IS THEREFORE ORDERED that the imposition of discipline against Ronald D. Barta be suspended and that he be placed on probation for a period of one year to commence upon the satisfactory completion of the 2-year period of probation entered in the prior case.

IT IS FURTHER ORDERED:

1. Respondent will continue to engage Charles E. Millsap, of Wichita, Kansas, to audit respondent's files three times. Such audits shall be done and reports filed by Mr. Millsap with the Disciplinary Administrator every 6 months commencing 1 month prior to the beginning of the probationary term and again at 5 months and 11 months into the probationary period.

2. Any activity disclosed by the audits which could be deemed violative of the Kansas Rules of Professional Conduct shall be noted and reported to the Disciplinary Administrator.

3. Respondent shall continue to upgrade his office practice for better case management as outlined in the initial Millsap audit report, dated December 3, 1999, and report thereon as may be required by the Disciplinary Administrator.

4.    Respondent shall cooperate with and provide any additional information requested by the Disciplinary Administrator.

5.    Respondent shall not violate any of the Kansas Rules of Professional Conduct during the term of his probation.

IT IS FURTHER ORDERED that, in the event respondent fails to abide by the conditions set out herein, a show cause order shall issue to respondent, and this court shall take whatever disciplinary actions it deems just and proper, including disbarment, without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of the proceeding be assessed to respondent.