No. 82,472

In the Matter of DAVID W. CARSON, *Respondent.*

(991 P.2d 896)

Opinion filed November 5, 1999.

*Edwin A. Van Petten*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for the petitioner.

*John H. Fields*, of Kansas City, argued the cause for respondent, and *David W. Carson*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against David W. Carson, of Kansas City, an attorney admitted to the practice of law in Kansas.

The formal complaint filed against respondent alleged that respondent violated KRPC 1.5(b) (1998 Kan. Ct. R. Annot. 304) (fees) and KRPC 5.3(b) (1998 Kan. Ct. R. Annot. 371) (responsibilities regarding nonlawyer assistants). The complaint was amended at the hearing to include KRPC 1.8(h) (1998 Kan. Ct. R. Annot. 317) (prohibited transactions). The final hearing report included finding a violation of KRPC 8.4(g) (1998 Kan. Ct. R. Annot. 386) (misconduct) had occurred.

A hearing was held on November 13, 1998, before a panel of the Kansas Board for Discipline of Attorneys. Respondent appeared in person and by counsel. The parties did not object to the composition of the panel or its jurisdiction of the matter. The formal complaint against respondent consisted of two cases, Count I, Case No. A6954 and Count II, Case No. A7056. Respondent, by and through counsel, filed an answer to the complaint and generally does not dispute the general facts stated in Count I but asserts no violation of the Kansas Rules of Professional Conduct occurred. Respondent further answered Count II by stating that the error committed was caused by secretarial mistakes or wrongful conduct

and that any harm was de minimis and not amounting to a violation of KRPC.

In Count I, the panel recommended the discipline of published censure. In Count II, the panel recommended that respondent be informally admonished pursuant to Rule 203(a)(4) (1998 Kan. Ct. R. Annot. 210). We note this court has no jurisdiction under Rule 211 (1998 Kan. Ct. R. Annot. 233) to consider respondent's appeal on Count II. We, therefore, dismiss this portion of the appeal and proceed to the findings and conclusions entered by the panel concerning Count I, case No. A6954.

## "FINDINGS OF FACT

. . . .

"2. Count I - Case No. A6954

"a. In June 1996, Lisa Katsantoness retained Respondent to represent her in post divorce child support matters. She changed attorneys after her divorce because she wanted a more aggressive attorney. At a meeting in Respondent's office, Ms. Katsantoness and Respondent agreed to a flat fee of $800 and she signed a promissory note to pay that amount. Respondent sent interrogatories to the ex husband, and Ms. Katsantoness made periodic payments totalling $360 to Respondent. Ms. Katsantoness explained she became frustrated and anxious when it took 8 months before the matter was heard, and by that time her ex husband had another child to support. The delay was due to time needed to answer the interrogatories and opposing counsel's need for an alternate hearing date.

"b. A hearing officer heard the child support matter on February 28, 1997 and promised a decision within 3-4 days. Ms. Katsantoness called Respondent's office several times in March. On March 24, 1997 Ms. Katsantoness talked to Respondent's secretary. The conversation rapidly deteriorated when his secretary refused to accede to Ms. Katsantoness's demands to call the hearing officer for the decision. Respondent then spoke to Ms. Katsantoness himself. The conversation between them was even less pleasant.

"c. By letter dated March 24, 1997, Respondent billed Ms. Katsantoness $460 (the balance due on her account). She called Respondent's office to get an explanation of the $20 difference between her payments and balance, but no one told her about the $20 fee to the clerk of the court that was added to the bill. Also on March 24, 1997, Respondent served Ms. Katsantoness with notice he was withdrawing as her attorney, although he never discussed that matter with her.

"d. While handling the child support matter, Respondent talked to Ms. Katsantoness about her desire to have custody and visitation changed, and Ms. Katsantoness agreed to pay an additional fee for that work, but no fee was agreed upon. Respondent prepared a motion for custody and structured visitation on behalf of Ms. Katsantoness in March, 1997.

"e. Next, Respondent filed an action to collect an $800 fee in Johnson County small claims court. Respondent testified that the increase from $460 to $800 was due to numerous phone calls by Ms. Katsantoness in connection with the support matter, but his ledger makes no such reference. The action was dismissed without prejudice when Respondent failed to appear at hearing. Thereafter, Respondent's firm filed a Wyandotte County limited action against Ms. Katsantoness for the $800 fee.

"f. Ms. Katsantoness complained to the Disciplinary Administrator when the billing dispute began. John O'Connor, of the Wyandotte County bar, investigated the matter; he asked Respondent to stay his collection process until after the investigation was completed. Respondent agreed, but nonetheless his firm tried to garnish the wages·of Ms. Katsantoness. The limited action was finally dismissed with prejudice when the parties signed a mutual release and satisfaction. Ms. Katsantoness stated she did not consult independent counsel before signing [the mutual release] although the court judge advised her to do so.

. . . .

## "CONCLUSIONS OF LAW

"Count I-Case No. A6954-Katsantoness: KRPC 1.5(b) [(1998 Kan. Ct. R. Annot. 304)] (Fees) requires that the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation. Respondent's 'open ended' promissory note falls short of compliance with said rule.

"In addition, Respondent utilized his billings in a vengeful, harassing and highly unprofessional manner following a confrontational telephone conference with the client on March 24, 1997. At that point, Ms. Katsantoness had paid $360.00, $20.00 of which had been applied to expenses, with the balance applying toward the original $800.00 promissory note.

"On the same day, Mr. Carson sent a $460.00 demand letter to the client.

"Three days later, on March 27, 1997, Mr. Carson filed an action in Johnson County, Kansas seeking judgment in the amount of $800, all without any communication or explanation to Ms. Katsantoness. Ms. Katsantoness appeared on the designated hearing date, April 22, 1997, but Mr. Carson failed to appear and the case was dismissed without prejudice.

"A short time later, Mr. Carson filed a second collection action against Ms. Katsantoness, this time in Wyandotte County, Kansas. During the general time period, Ms. Katsantoness had filed an ethics complaint against Mr. Carson and the matter was under active investigation by attorney John O'Connor. Mr. O'Connor obtained an agreement from Respondent that further activity in the Wyandotte County collection action would be deferred pending completion of the investigation. Mr. O'Connor confirmed the agreement by letter to Respondent, copied to Ms. Katsantoness. In apparent disregard of the agreement to defer further action and without further notice to Ms. Katsantoness, Respondent ob-

tained a judgment in the Wyandotte County action and instituted a garnishment proceeding to collect the same.

"In January, 1998, the Wyandotte County collection action was dismissed with prejudice pursuant to a Mutual Full Release and Satisfaction agreement, including waiver of malpractice claim, prepared by Respondent's office and which agreement was signed without benefit of counsel by the client. The panel finds a violation of KRPC 1.8(h) in connection with Respondent's obtaining an agreement waiving a malpractice claim where the client was not represented by counsel. However it is noted that the Court which approved the settlement specifically so advised the client of the need for counsel and she admitted knowingly waiving such right.

"In summary, Mr. Carson's conduct representing Ms. Katsantoness adversely reflects on his fitness to practice law, all in violation of KRPC 8.4(g). It should be noted that the panel does not find any evidence of excessive charges by Mr Carson or any particular lack of competence in the services performed.

"It should further be noted that Mr. Carson performed certain additional services not contemplated in the initial engagement involving only child support. During the initial engagement, Mr. Carson also counseled Ms. Katsantoness in regard to child custody matters and even filed a motion in such regard in Johnson County, Kansas, in March, 1997, shortly prior to withdrawing from the representation. There was no evidence as to the reasonable value of such services and no particular reliance thereon by Mr. Carson in connection with the escalation of his fee in March, 1997. In the latter regard, Mr. Carson testified that his increase of fees was occasioned by client's numerous telephone calls to his office, without any mention of the custody matter."

In disciplinary matters, this court has a duty to examine the evidence and determine for itself the judgment to be entered. The report of the disciplinary panel is advisory only and will be given the same dignity as a special verdict by a jury or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony. *In re Berg*, 264 Kan. 254, 269, 955 P.2d 1240 (1998).

In his brief and argument before this court, respondent raised several objections to the panel's report. He argues that the panel's finding that he violated KRPC 8.4(g) was inappropriate in as much as the formal complaint did not allege such a violation. He claims he was, therefore, deprived of the ability to make a defense.

In the case of *In re Berg*, we stated that the Disciplinary Administrator need not set forth in the complaint the specific disci-

plinary rules allegedly violated nor plead specific allegations of misconduct. Instead, the question is whether the facts set out in the complaint in connection with the charge put respondent on notice as to what ethical violations may arise therefrom. See 264 Kan. at 275. It is not incumbent on the Disciplinary Administrator to notify respondent of charges of specific acts of misconduct as long as proper notice is given of the basic factual situation out of which the charges might result. 264 Kan. at 275. See *State v. Turner*, 217 Kan. 574, 579-80, 538 P.2d 966 (1975).

Thus, the failure to allege a violation of KRPC 8.4(g) does not necessarily preclude the panel from concluding such a violation occurred, based upon the evidence presented. KRPC 8.4(g) prohibits a lawyer from engaging in "any other conduct that adversely reflects on the lawyer's fitness to practice law." This provision relates to fitness and may be violated in cases where other disciplinary rules are also violated. The specific violations charged and found by the evidence may adversely reflect on the lawyer's fitness to practice law. Under the standard of *Berg* and *Turner*, the formal complaint in this case was sufficient to provide respondent with notice that he was being accused of conduct which would, in addition to violating KRPC 1.5(b), also raise concerns over his fitness to practice law. As a result, his ability to mount a defense was not prejudiced by the failure of the Deputy Disciplinary Administrator to specifically charge a violation of KRPC 8.4(g).

Respondent also complains that the panel erred in allowing the Deputy Disciplinary Administrator to amend the complaint during the hearing to charge a violation of KRPC 1.8(h). He contends that the amendment was beyond the scope of the facts alleged in the formal complaint and deprived him of an opportunity to make a defense.

The Deputy Disciplinary Administrator asked the panel to consider a violation of KRPC 1.8(h), based on testimony that respondent did not advise Katsantoness that she should seek legal counsel prior to her signing a settlement agreement that absolved him of malpractice. KRPC 1.8(h) states:

"A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is inde-

pendently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith." (1998 Kan. Ct. R. Annot. 317.)

The formal complaint in this matter charges a violation of KRPC 1.5(b) in connection with respondent's billing practices. It makes no mention of the later settlement and release executed by the parties. Thus, the formal complaint, until the amendment, did not put respondent on notice that the release would be subject to inquiry.

However, the disciplinary panel did allow the complaint to be amended to charge a violation of KRPC 1.8(h). Supreme Court Rule 224(b) provides that "[e]xcept as otherwise provided, the Rules of Civil Procedure apply in disciplinary cases." (1998 Kan. Ct. R. Annot. 265). K.S.A. 1998 Supp. 60-215 governs amendments to pleadings under the Rules of Civil Procedure. That statute provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence." K.S.A. 1998 Supp. 60-215(b).

K.S.A. 1998 Supp. 60-215(b) is applicable in a disciplinary proceeding. We have suggested that amendment of a disciplinary complaint during a hearing is possible. See *In re Berg*, 264 Kan. at 275 ("[T]he better procedure might have been to ask to amend the allegations to conform to the evidence presented . . . .). The focus of K.S.A. 1998 Supp. 60-215(b) is on allowing amendments, as long as the defendant is not prejudiced thereby and has a reasonable opportunity to defend against the amendment.

In this case, the knowledge of the possible violation surfaced during the testimony of Katsantoness. The formal motion to amend was made at the close of the Deputy Disciplinary Administrator's case. Respondent's attorney objected on the grounds of surprise. However, although respondent now claims that his ability to prepare a defense was hampered by the change, he did not at that time ask for a continuance to allow more time to prepare. There is no showing that respondent was in any way prejudiced by the amendment. Because respondent failed to show prejudice, the amendment was proper.

Respondent further contends that the facts were insufficient to establish a violation of KRPC 1.5(b). He argues that the fee arrangement he had with Katsantoness complied with the rule. We agree but note that the open-ended factor in the flat fee quote provided very little information to the client of the basis for the final fee.

Attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Seck*, 263 Kan. 482, 489, 949 P.2d 1122 (1997). Clear and convincing evidence means

" 'the witnesses to a fact must be found to be credible; the facts to which the witness testifies must be distinctly remembered; the details in connection with the transaction must be narrated exactly and in order; the testimony must be clear, direct and weighty; and the witnesses must be lacking in confusion as to the facts in issue.' " *In re Berg*, 264 Kan. at 269 (quoting *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 78, 596 P.2d 816 [1979]).

The evidence itself is not in dispute. Respondent freely admits that rather than charge by the hour, he gives his clients a flat fee with the expectation that if more work than usual is put into the case, more will be charged on the basis of his evaluation of the additional work involved. The only question is whether this arrangement violates KRPC 1.5(b).

KRPC 1.5(b) states:

"When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation." (1998 Kan. Ct. R. Annot. 305.)

The disciplinary panel found that "[r]espondent's 'open ended' promissory note falls short of compliance with said rule."

In determining whether respondent's arrangement violated KRPC 1.5(b), an examination of the Kansas Comment to the rule is helpful. The Comment states:

"When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee. In a new client-lawyer relationship, however, an understanding as to the fee should be promptly established. It is not necessary to recite all the factors that underlie the basis of the fee, but only those that are directly involved in its computation. It is sufficient, for example, to state that the basic rate is an hourly charge or a fixed amount or an estimated amount, or to identify the factors that may be taken into account in finally fixing the fee. When developments occur during the representation that render an earlier estimate substantially inaccurate, a revised estimate should be provided to the client. A written statement concerning the fee reduces the possibility of misunderstanding. Furnishing the client with a simple memorandum or a copy of the lawyer's customary fee schedule is sufficient if the basis or rate of the fee is set forth." (1998 Kan. Ct. R. Annot. 306.)

The panel seemed to have trouble with the way respondent set his fee in the Katsantoness case. Specifically, the panel seemed troubled that the flat fee quoted was not a flat fee but, instead, could be raised based solely on the judgment of respondent as to how much work he had done on the case. We also find this troubling but insufficient to establish a violation of KRPC 1.5(b).

This court has decided two cases involving violations of KRPC 1.5(b). See *In re Barta*, 265 Kan. 762, 962 P.2d 532 (1998); *In re Phillips*, 260 Kan. 909, 925 P.2d 435 (1996). In both *Barta* and *Phillips*, there was no discussion between the attorneys and their clients as to what the fees might be, in clear violation of KRPC 1.5(b). As a result, these two cases are of little value in analyzing the situation at hand, where respondent clearly set out his flat fee but then also provided that he might charge more. The closest fact pattern is in *Phillips*, where the client paid the lawyer $700 to represent her. However, there was no agreement between the lawyer and the client as to how the fee was to be determined.

The problem with respondent's fee setting is not that it is a flat fee, as such would obviously be within the rule. Rather, the problem is that respondent has reserved the right to set a fee higher

than the flat fee whenever, in his estimation, the time spent on the case is more than usual. This information does little to inform the client of the basis of the fee. On the other hand, it does not appear that KRPC 1.5(b) requires that the exact basis for every charge be detailed. Rather, the rule states that it is sufficient "to identify the factors that may be taken into account in finally fixing the fee." Arguably, respondent identified the factors which would be taken into account, *i.e.*, $800, with more or less charged depending on his professional judgment. We conclude that a violation of KRPC 1.5(b) has not been established by clear and convincing evidence.

Respondent argues that the evidence was insufficient to establish a violation of KRPC 1.8(h). The panel found that respondent had violated this rule by failing to inform Katsantoness to seek counsel before signing the release agreement regarding the attorney fees.

KRPC 1.8(h) states:

"A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith." (1998 Kan. Ct. R. Annot. 317.)

Although respondent noted that he was not present when the release was signed, he conceded that he was a party to the release. Further, the release unquestionably provides that it releases respondent from "any claim or counter-claim [Katsantoness] may have against [respondent] of any nature or kind whatsoever including but not limited to *legal malpractice*, malicious prosecution or abuse of process." (Emphasis added.)

Respondent, however, argued that his activity did not fit within the plain language of the rule. He noted that at the time the release was made, Katsantoness was no longer a client of his and, therefore, he could not have violated the first part of KRPC 1.8(h), making an agreement prospectively limiting the lawyer's liability to a client for malpractice. He also argued that because Katsantoness had not asserted a claim for malpractice at the time the release was signed, he could not have violated the second part of KRPC 1.8(h), settling a claim for malpractice liability with an unrepresented client or

former client without first advising that person in writing that independent representation is appropriate in connection therewith. He further noted that the release, whether or not it mentioned legal malpractice, would have had the effect of prohibiting any potential malpractice claim, as a malpractice claim would be a compulsory counterclaim to respondent's fee action.

Respondent's technical arguments missed the point. Respondent is guilty of a violation of the second part of KRPC 1.8(h), that is, settling a claim for malpractice liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith. It does not matter that no actual claim existed at that point. In settling the matter, respondent waived any potential claim for malpractice liability. Under such circumstances, the lawyer has a duty to inform the former client that independent representation is advisable. The facts are sufficient to show a violation of KRPC 1.8(h).

Respondent argues that the facts are insufficient to establish a violation of KRPC 8.4(g). As noted above, KRPC 8.4(g) prohibits conduct which adversely reflects on the lawyer's fitness to practice law.

In finding a KRPC 8.4(g) violation, the panel focused on respondent's conduct as a whole. Respondent, however, disagreed with many of the panel's conclusions. Determining whether respondent's conduct violated KRPC 8.4(g), requires an analysis of the panel's findings.

First, the panel concluded that respondent had failed to communicate the basis of his fees. As discussed above, insufficient clear and convincing evidence exists to establish a violation of KRPC 1.5(b).

Second, the panel concluded that respondent had utilized his billings in a vengeful, harassing, and unprofessional manner. Respondent argued that this conclusion was not supported by the evidence. However, the evidence shows that immediately after a telephone confrontation with the client, respondent added a considerable sum to her bill. Even though the panel found the total

bill not to be unreasonable, the timing of the additional charge is suspect and does, in fact, adversely reflect on respondent.

Third, the panel found that respondent had breached an agreement with the Disciplinary Administrator's office in that he agreed not to proceed with his collection case until the disciplinary investigation was completed, then reneged on the agreement. However, this finding is not supported by the evidence. Although the panel specifically found that such an agreement existed, and further specifically found that the Disciplinary Administrator's office confirmed the agreement by letter to respondent, there is nothing in the record to establish this. The only testimony regarding such an agreement came from Katsantoness who testified that it was her understanding from speaking to the investigator that he had reached such an agreement with respondent and sent respondent a letter to that effect. She stated that she had received a copy of the letter which thanked respondent for continuing the matter but did not mention the date to which the matter was continued. The letter itself was not introduced nor did any person from the Disciplinary Administrator's office testify as to the agreement or what the agreement provided. Thus, the evidence fails to establish that respondent violated the agreement in garnishing Katsantoness some 5 months after the date of the letter.

Finally, the panel concluded that respondent had violated Rule 1.8(h) in his actions with regard to the settlement agreement. As noted above, respondent did indeed do so.

While we are concerned with respondent's increase of his fee following a heated exchange with his client, we are not convinced that the panel's conclusion that respondent violated KRPC 8.4(g) is satisfied by clear and convincing evidence.

Respondent finally argues that the recommended discipline of published censure is too harsh. He argues that at most, his conduct deserves only an informal admonition.

The panel found the following with regard to aggravating and mitigating circumstances:

### "MITIGATION/AGGRAVATION

"The panel finds the following factors in aggravation applicable to this matter:

"(a) prior disciplinary record—Respondent was censured for one matter and admonished for another in January 1988; he was again disciplined 1993 concerning a 1983 loan;

"(d) multiple offenses—there are two counts herein;

"(g) refusal to acknowledge wrongful nature of conduct—Respondent has not admitted any wrongdoing in billing Ms. Katsantoness;

"(h) both complainants were in highly emotional legal situations where they needed counsel to represent their best interests;

"(i) substantial experience in the practice of law—as Respondent stated, he has [engaged in the] practice of law for more than 50 years.

"The panel finds the following factors in mitigation applicable to this matter:

"(d) timely good faith effort to . . . rectify consequences of misconduct—Respondent promptly prepared an Order Nunc Pro Tunc once the error in the journal entry visitation dates was discovered;

"(g) previous good character and reputation in the community . . .—Former Governor John Anderson testified in support of Respondent's honesty and truthfulness; he believes Respondent is an aggressive, but ethical attorney.

"(m) remoteness of prior offenses—Respondent['s] disciplinary record involves matters more than ten years ago."

We have considered the findings and conclusions of the panel and with the exceptions noted in this opinion, adopt such findings and conclusions supported by clear and convincing evidence. We recognize that the alleged violation of KRPC 1.5(b), relating to respondent's fee charged, is not established by clear and convincing evidence. Nor is the panel's conclusion that respondent violated KRPC 8.4(g) or breached an agreement with the Disciplinary Administrator's office supported by clear and convincing evidence. However, respondent's increase of his fee following a heated exchange with his client and his violation of KRPC 1.8(h), together with matters found in aggravation and mitigation, warrant imposition of the recommended sanction. On the whole record, we agree with the recommended sanction by the panel.

IT IS THEREFORE ORDERED that David W. Carson receive published censure.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs be assessed to the respondent.