No. 83,887

In the Matter of KENT A. ROTH, *Respondent.*

(7 P.3d 241)

Opinion filed June 2, 2000.

*Edwin A. Van Petten,* deputy disciplinary administrator, argued the cause and was on the brief for the petitioner.

*Michael Gayoso, Jr.,* of Rork Law Office, of Topeka, argued the cause, and *William K. Rork,* of the same firm, was with him on the brief for respondent. *Kent A. Roth,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Kent A. Roth, of Ellinwood, an attorney admitted to the practice of law in Kansas.

Complaints filed against the respondent alleged that the respondent violated KRPC 1.1 (1999 Kan. Ct. R. Annot. 284) (competence) and KRPC 8.4 (d) and (g) (1999 Kan. Ct. R. Annot. 399) (misconduct).

A hearing was held before a panel of the Kansas Board for Discipline of Attorneys. The respondent appeared through counsel and the Disciplinary Administrator appeared by and through Edwin A. Van Petten, Deputy Disciplinary Administrator.

Based upon clear and convincing evidence, a unanimous panel made the followings findings of facts and conclusions of law.

### "FINDING OF FACTS

"1. Kent A. Roth, is an attorney at law, Kansas Attorney Registration No. 10033. His last registration address with the Clerk of the Appellate Courts of Kansas is . . . Ellinwood, Kansas. . . .

"2. Albert Farris and Madeline Farris were married, and to this union, five (5) children were born: Melvin Farris, Mary Ann (Farris) Wilson, Alvin Farris, Joseph Farris, and William Farris. In 1978, Albert Farris and Madeline Farris divorced.

"3. In 1982, the Respondent prepared a will for Albert Farris. The will was not executed by Albert Farris until February, 1983.

"4. In 1984, Madeline Farris sought and obtained a conservatorship on behalf of her former husband.

"5. Thereafter, in 1994, Albert Farris died. Following Albert Farris' death, the Respondent was retained by Alvin Farris, the executor of the estate of Albert Farris. Alvin Farris hired the Respondent to probate the estate.

"6. The estate became involved in protracted litigation regarding the conversion of estate assets by the conservator prior to Albert Farris' death. The litigation divided the Farris family.

"7. During the course of the probate matter, the Respondent prepared a promissory note in the amount of $20,000 and two mortgages in the amount of $10,000 each in favor of his law firm. Alvin Farris executed the note and mortgages and the Respondent recorded the mortgages on the property to be devised to Joseph Farris and William Farris.

"8. Prior to recording the mortgages, the Respondent did not provide notice of the encumbrance to Joseph Farris and William Farris. Additionally, the Respondent did not advise Joseph Farris and William Farris that they had the right to seek independent counsel regarding the placement of the mortgages on the properties.

"9. Joseph Farris and William Farris did not learn of the existence of the mortgages until after they hired an attorney, Michael Holland, to represent their interests in the probate matter.

"10. After William Farris learned of the existence of the encumbrances on the property to be devised to him, William Farris was tremendously upset.

"11. Joseph Farris and William incurred costs for legal services as a direct result of the two mortgages filed against the property to be devised to them.

"12. The Respondent has provided a variety of 'explanations' for the note and mortgages. These 'explanations' are at odds with each other. The Respondent stated that he sought the note and mortgages (1) to protect his attorney fees, (2) to compel a settlement, (3) to put the public on notice that fraudulent transfers had occurred, and (4) as a cheaper alternative to filing a Chapter 60 action.

"a. *Protect his attorney fees.*

"(1) The Deputy Disciplinary Administrator called Thomas J. Berscheidt to testify. Mr. Berscheidt is an attorney and mediator. Mr. Berscheidt was appointed as the mediator of the Albert Farris probate case. During the attempted mediation of the probate matter, Mr. Berscheidt discussed the promissory note and mortgages with the Respondent. The Respondent told Mr. Berscheidt that the mortgages were filed to protect his potential attorneys fees in the probate case. The Respondent informed Mr. Berscheidt that his attorney fees could be as high as $20,000. Alvin Farris confirmed to Mr. Berscheidt that the reason the mortgages were filed was to protect the Respondent's potential attorney fees.

"2. Don Burns, investigator for the Office of the Disciplinary Administrator, was called to testify regarding an interview he conducted of Alvin Farris. Mr. Burns showed Alvin Farris copies of the mortgages and asked him to explain why the mortgages were drawn. Alvin Farris told Mr. Burns that he signed the mortgages on the advice of the Respondent, to secure the Respondent's attorney fees. Mr. Burns questioned Alvin Farris about alleged fraudulent transfers of land made

between Madeline Farris and William Farris. Alvin Farris said that he was unaware of any fraudulent transfers.

"b. *Compel a settlement*. During the course of the disciplinary investigation and prosecution, the Respondent stated that he did not intend to enforce the note and mortgages and he recognized that the promissory note and the mortgages were not necessary to secure his attorney fees. In a letter dated May 14, 1998, the Respondent stated:

'There was never any expectation on my part this note or Mortgages would be enforced. The hope was to obtain cooperation from Joe and William Farris. If they came to the realization continued feuding in the family would only cause the estate to shrink, perhaps a settlement would come sooner rather than [later]. In any event, it didn't work and the mortgages were released within twenty (20) days of demand pursuant to K.S.A. 58-2309a(d).'

"c. *Put the public on notice that fraudulent transfers had occurred.* Also, during the course of the hearing, the Respondent testified that he sought the note and recorded the mortgages because Alvin Farris, the executor, allegedly wanted 'something done' to stop fraudulent transfers made by Madeline Farris to William Farris and Joseph Farris and to put the public on notice of the ongoing dispute. The Respondent also relied on this explanation at the trial court level.

"d. *Cheaper alternative to filing a Chapter 60 action*. Finally, the Respondent testified that Alvin Farris did not want the Respondent to file a Chapter 60 action to remedy the situation. So, the Respondent allegedly counseled Alvin Farris that the note and mortgages would serve as a cheaper alternative to filing a Chapter 60 action."

## "CONCLUSIONS OF LAW

"Based upon the above findings of fact, the Hearing Panel makes the following conclusions of law:

"1. As detailed in the Formal Complaint as Amended at Hearing, the Respondent has violated Kansas Rules of Professional Conduct 1.1, 8.4(d), and 8.4(g).

"2. Rule 1.1 requires that attorneys provide competent representation to their clients. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' In this case, the Respondent breached the standard of competence required by Rule 1.1 by filing the mortgages. The Respondent has provided several explanations as to why the two mortgages were filed. Regardless of which explanation is believed, each establishes the Respondent's incompetence. Assuming that the Respondent's testimony at the hearing on the Formal Complaint is the truth, the Respondent filed these mortgages to put the public on notice of fraudulent transfers. However, this action not only did not accomplish this goal, but also placed the executor of the estate of Albert Farris in a position whereby the executor could have been found to have breached his fiduciary duty by unnecessarily encumbering the property of two of the heirs.

"3. The Respondent engaged in conduct that is prejudicial to the administration of justice, in violation of Rule 8.4(d). In correspondence sent to an attorney serving as an investigator of this matter, the Respondent indicated that he obtained the promissory note and recorded the mortgages because he wanted to pressure a settlement of the litigation. Using the legal process in this fashion is prejudicial to the administration of justice.

"4. Pursuant to Rule 8.4(g), the Respondent engaged in conduct that adversely reflects on his fitness to practice law by providing false information to the Hearing Panel. When the Respondent sought Alvin Farris' signature on the promissory note and the mortgages, he did so to protect his fee. Alvin Farris understood this to be the only reason for the promissory notes and was not familiar with any fraudulent transfers of property. Additionally, the Respondent told the mediator, Mr. Berscheidt, that the reason for the note and mortgages was to protect the Respondent's fee. However, contrary to the understanding of the executor, and contrary to what the Respondent told Mr. Berscheidt during the mediation, the Respondent indicated that he secured the note and mortgages to compel the parties to settle the litigation. And now, the Respondent has testified that the reason he obtained the note and filed the mortgages was because it was cheaper to do so than file a Chapter 60 action, and to put the public on notice of fraudulent transfers of adjacent property. . . The Respondent's inability to provide accurate and truthful information to the Hearing Panel adversely reflects on his ability to practice law."

## Standard of Review

In disciplinary matters, this court has a duty to examine the evidence and determine for itself the judgment to be entered. The report of the disciplinary panel is advisory only and will be given the same dignity as a special verdict by a jury or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony. *In re Carson*, 268 Kan. 134, 137, 991 P.2d 896 (1999).

The respondent raises several issues regarding the panel's findings and conclusions. First, he argues that the panel erred in finding that he was in violation of KRPC 8.4(d) (engage in conduct that is prejudicial to the administration of justice) rather than the more specific KRPC 4.4 (1999 Kan. Ct. R. Annot. 381) (respect for rights of third parties) and in finding that he was in violation of KRPC 8.4(g) (engage in any other conduct that adversely reflects on the lawyer's fitness to practice law) rather than the more specific

KRPC 1.8 (1999 Kan. Ct. R. Annot. 325) (conflict of interest: prohibited transactions).

The panel found that the respondent had informed an investigator that he had filed the liens in order to pressure a settlement and that this use amounted to an abuse of the legal process and was prejudicial to the administration of justice.

The respondent, however, contends that the rule violated would be the more specific KRPC 4.4, which concerns respect for rights of third persons, and states: "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such person." (1999 Kan. Ct. R. Annot. 381-82.)

KRPC 8.4(g) provides that it is professional misconduct for a lawyer to "engage in any other conduct that adversely reflects on the lawyer's fitness to practice law." (1999 Kan. Ct. R. Annot. 399.) The panel found that the respondent's inability to provide accurate and truthful information to the hearing panel adversely reflects on his fitness to practice law. The respondent, however, contends that the rule violated in this instance would be the more specific KRPC 1.8, regarding conflict of interest, which prohibits the lawyer from entering into a business transaction with a client. It is difficult to follow the respondent's argument. The respondent may be referring to the panel's finding that he violated 8.4(d) rather than the panel's finding that he violated 8.4(g). The panel found that the respondent violated 8.4(d) by using the notes and mortgage to pressure a settlement.

Although by no means clear, the respondent's argument appears to be that (1) he should have been charged with violating the more specific KRPC sections; (2) there is no sufficient evidence to show that he violated those more specific sections; and thus (3) he did not violate any KRPC sections. The respondent seeks to support this novel and convoluted theory by referencing the criminal case of *State v. Le*, 260 Kan. 845, Syl. ¶ 2, 926 P.2d 638 (1996), wherein we stated that where a conflict between general and specific statutes exists, the specific statute will prevail unless it appears that the legislature meant to make the general statute controlling.

The lack of logic in this reasoning is readily apparent. The respondent's conduct in attempting to use mortgages to force a settlement may not technically have violated KRPC 4.4 in that he did not exactly use the legal process to "embarrass, delay, or burden a third person." However, his actions did constitute an abuse of the legal process which proved to be prejudicial to the administration of justice. Similarly, the violation of KRPC 8.4(g) was for the more general failure to be truthful with the panel rather than for the specific conflict of interest problems which also arose. The rules in this case do not conflict. The respondent's argument is without merit.

The respondent argues that the panel denied him due process by allowing the complaint to be amended to add an alleged violation of KRPC 1.1 (incompetence) following the presentation of the Disciplinary Administrator's case. This contention is without merit. While the Disciplinary Administrator was allowed to amend the complaint, the respondent was granted a continuance to prepare for and defend against the amended complaint. In *In re Carson*, we said:

"[T]he Disciplinary Administrator need not set forth in the complaint the specific disciplinary rules allegedly violated nor plead specific allegations of misconduct. Instead, the question is whether the facts set out in the complaint in connection with the charge put respondent on notice as to what ethical violations may arise therefrom. [Citation omitted.] It is not incumbent on the Disciplinary Administrator to notify respondent of charges of specific acts of misconduct as long as proper notice is given of the basic factual situation out of which the charges might result." 268 Kan. at 137-38.

We held that even where the formal complaint does not put the respondent on notice, an amendment to the complaint may be allowed so long as the respondent is not prejudiced thereby and has a reasonable opportunity to defend against the amendment. 268 Kan. at 139-40.

The formal complaint put the respondent on notice as to the basic factual situation out of which the violation of KRPC 1.1 resulted. Moreover, a continuance was provided at that point to allow the respondent to prepare against the new charge. Therefore, he was not denied due process by the amendment.

The respondent also argues that he was never allowed a reasonable opportunity to defend against the violation of KRPC 8.4(g) (engage in any other conduct that adversely reflects on the lawyer's fitness to practice law) because the panel found that violation based on the respondent's conduct and conflicting stories during the investigation and the hearings. The respondent argues that this finding was unfair and that the panel should not be allowed to rely on his conduct before the hearing panel as the basis for a violation.

Due process requires that a respondent in a disciplinary action be afforded notice of the nature of the charges against him or her and a meaningful opportunity for a defense. *In re Seck*, 263 Kan. 482, 488, 949 P.2d 1122 (1997). The initial complaint against the respondent alleged a violation of KRPC 8.4(g) as follows:

"7. The actions of the respondent in filing the mortgages against the real estate owned by Joseph and William Farris was *deceitful,* as there was no legal purpose for the note or mortgages. The actions were prejudicial to the administration of justice, as such mortgages were filed simply to pressure those individuals to settling pending litigation against their own interests, and reflects adversely upon the respondent's ability to practice law in the state of Kansas, all in violation of Model Rules of Professional Conduct 8.4(c)(d) and (g)." (Emphasis added.)

Thus, the respondent was notified that his actions regarding the note and mortgages would form the basis of the alleged violation of KRPC 8.4(g). In finding a violation of 8.4(g), the panel concluded:

"4. Pursuant to Rule 8.4(g), the Respondent engaged in conduct that adversely reflects on his fitness to practice law by providing false information to the Hearing Panel. When the Respondent sought Alvin Farris' signature on the promissory note and the mortgages, he did so to protect his fee. Alvin Farris understood this to be the only reason for the promissory notes and was not familiar with any fraudulent transfers of property. Additionally, the Respondent told the mediator, Mr. Berscheidt, that the reason for the note and mortgages was to protect the Respondent's fee. However, contrary to the understanding of the executor, and contrary to what the Respondent told Mr. Berscheidt during the mediation, the Respondent indicated that he secured the note and mortgages to compel the parties to settle the litigation. And now, the Respondent has testified that the reason he obtained the note and filed the mortgages was because it was cheaper to do so than file a Chapter 60 action, and to put the public on notice of fraudulent transfers of adjacent property. . . . The Respondent's inability to provide accu-

rate and truthful information to the Hearing Panel adversely reflects on his ability to practice law."

The respondent contends that statements he made at the hearing regarding his reasons for filing the mortgage and notes may not be used by the panel as a basis for finding that respondent violated KRPC 8.4(g). While this court has not addressed this issue, other jurisdictions addressing this issue have concluded that false statements made before a disciplinary panel at hearing cannot be used as a basis for a disciplinary violation found by that panel, since the respondent does not have a chance to defend against such violation. See *In re Tocco*, 194 Ariz. 453, 984 P.2d 539 (1999); *Attorney Griev. Com'n v. Goldsborough*, 330 Md. 342, 361, 624 A.2d 503 (1993). Such false statements may, however, be the subject of a new and separate disciplinary proceeding. *Goldsborough*, 330 Md. at 361-62.

We agree with the respondent that to the extent the panel relied upon what it characterized as his false statements at the hearing as the basis for establishing a violation of KRPC 8.4(g), the panel erred. The veracity of the respondent at the hearing cannot in and of itself establish a rule violation because the respondent was not given an opportunity to defend against such an allegation. However, we also conclude that the respondent's unorthodox conduct regarding the filing of the note and mortgages, conduct which he is still unable to adequately explain, is sufficient to establish a violation of KRPC 8.4(g). Whether the purpose of the filing was to secure an unearned attorney fee, to pressure a family settlement, or a misguided attempt to put the public on notice of alleged fraudulent transfers, the respondent's actions adversely reflect on the respondent's ability to practice law, establishing a violation of KRPC 8.4(g).

The respondent next contends that the panel violated Supreme Court Rule 216 (1999 Kan. Ct. R. Annot. 243) by failing to provide him with a copy of the interview notes of investigator Don Burns until the day prior to the hearing. He argues that the failure to provide him with the testimony prejudiced his defense because he was not able to prepare to defend against the alleged inconsistent statement which Burns attributed to Alvin Farris.

Supreme Court Rule 216(d) states: "Upon request, the Disciplinary Administrator shall disclose to the respondent all evidence in his possession relevant to the proceeding. No other discovery shall be permitted." However, although the respondent now argues that he was unfairly surprised by the notes of Burns, at the hearing the respondent stipulated to the admissibility of the notes. Thus, he has waived this issue.

The fourth issue raised by the respondent is that the panel erred in considering the testimony of Thomas J. Berscheidt regarding events related to him in his capacity as a mediator. The respondent contends that because the mediation involved not only the probate matter but also a discussion of the malpractice suit and complaints against the respondent, it was not proper for Berscheidt to disclose information to the disciplinary panel.

K.S.A. 60-452a, in effect at the time the mediation was conducted in 1995, provided:

"(a) If parties to a dispute agree to submit their dispute to any forum for mediation, conciliation or arbitration and all parties so agree in writing, no person who serves as mediator, conciliator or arbitrator not that person's agent may be subpoenaed or otherwise compelled to disclose any matter disclosed in the process of setting up or conducting the mediation, conciliation or arbitration."

In 1996, the statute was amended to state:

"(a) All verbal or written information transmitted between any party to a dispute and a neutral person conducting the proceeding, or the staff of an approved program under K.S.A. 5-501 *et seq.* and amendments thereto shall be confidential communications. No admission, representation or statement made in the proceeding shall be admissible as evidence or subject to discovery. A neutral person shall not be subject to process requiring the disclosure of any matter discussed during the proceedings unless all the parties consent to a waiver. Any party, including the neutral person or staff of an approved program conducted the proceeding, participating in the proceeding has a privilege in any action to refuse to disclose, and to prevent a witness from disclosing, any communication made in the course of the proceeding. The privilege may be claimed by the party or anyone the party authorizes to claim the privilege." L. 1996, ch. 129, § 4.

A 1999 amendment to K.S.A. 60-452a limited the privilege by providing:

"(b) The confidentiality and privilege requirements of this section shall not apply to:

"(1) Information that is reasonably necessary to allow investigation of or action for ethical violations against the neutral person conducting the proceeding or for the defense of the neutral person or staff of an approved program conducting the proceeding in an action against the neutral person or staff of an approved program if the action is filed by a party to the proceeding." L. 1999, ch. 157, § 3.

The respondent argues that because the complaint against him was filed prior to the effective date of the 1999 amendment, Berscheidt's testimony as a mediator should have been excluded. Prior to the 1999 amendment, the provisions of K.S.A. 60-452a would have excluded Berscheidt's testimony as a mediator if an appropriate objection had been made. However, the respondent did not object to Berscheidt's testimony or assert such a privilege at the hearing. As a result, his argument fails.

The respondent claims that the panel erred in adopting the hearsay testimony of Burns regarding his interview with Farris. Burns testified that he spoke to Alvin Farris regarding the filing of the note and mortgages. According to Burns, Alvin Farris told him that the note and mortgages were created on the advice of the respondent to guarantee or secure the respondent's fees. Alvin Farris told Burns that he was not aware that his mother was engaging in any fraudulent transfers.

The respondent submitted two affidavits from Alvin Farris. These affidavits contradict what Burns related that Alvin Farris told him. The affidavits refute Burns' testimony that the notes and mortgage were recorded to protect respondent's attorney fee. The respondent argues that the two affidavits should be conclusive as to what actually happened and that Burns' testimony on the subject is hearsay and should not be believed. The hearsay rule is applicable in disciplinary actions. See *In re Seck*, 263 Kan. at 489. However, the respondent failed to raise a hearsay objection at the hearing, thereby allowing the panel to consider the testimony of Burns and decide for itself the truth based on the evidence. The respondent's contention is without merit.

The respondent's final claim is that the evidence fails to establish violations of KRPC 1.1 (competence), KRPC 8.4(d) (engage in conduct that is prejudicial to the administration of justice), and KRPC

8.4(g) (engage in any other conduct that adversely reflects on the lawyer's fitness to practice law).

Attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Seck*, 263 Kan. at 489. Clear and convincing evidence means that the witnesses to a fact must be found to be credible; the facts to which the witness testified must be distinctly remembered; the details in connection with the transaction must be narrated exactly and in order; the testimony must be clear, direct, and weighty; and the witnesses must be lacking in confusion as to the facts in issue. *In re Carson*, 268 Kan. at 140.

The respondent argues that his clouding of the title of the property to be devised to Joseph and William Farris was a reasonable response to an emergency situation—that is, the alleged fraudulent transfer of property outside the estate from Madeline Farris to William Farris. He further contends that the mortgage was based on the law, in that the case of *In re Estate of Chestnut*, 4 Kan. App. 2d 694, 610 P.2d 1132 (1980), established the power of an executor to sell estate property. According to the respondent, his conclusion that the executor could also mortgage estate property was a logical extension of this holding.

The respondent's argument, however, fails to acknowledge that his actions, while they may have been made in response to the alleged fraudulent transfer, were legally ineffective in stopping further transfers. Also, while it may be arguable that the executor has the power to mortgage estate property if the situation demands it, the actions of the respondent were clearly unjustified and succeeded only in exposing the executor of the estate to liability for a breach of fiduciary duty. The respondent's actions demonstrate his lack of competence, thus establishing a violation KRPC 1.1.

The respondent caused a mortgage to be placed upon property devised to Joseph and William Farris as part of some ill-conceived plan to prevent Madeline Farris from engaging in fraudulent transfers of nonestate assets, a plan having no legal basis. Although the notes and mortgages stated their purpose was to secure the respondent's attorney fees, the respondent admitted that he had a concealed motive, which was either to attempt to somehow force

a settlement or to prevent fraudulent transfers, depending on which explanation is believed. Use of the legal system in this manner was prejudicial to the administration of justice in violation of KRPC 8.4(d), and reflected adversely on his ability to practice law in violation of KRPC 8.4(g).

We conclude that the findings and conclusions of the panel, except those noted above in this opinion, are supported by clear and convincing evidence.

The panel recommended to this court that the respondent should receive published censure for his violations. In making this recommendation the panel noted:

"[T]he factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Rule 3 of the Standards, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

### "Duty Violated

"In this case, the Respondent owed a duty of competent representation to his client, the estate of Albert Farris. Additionally, the Respondent owed the legal system the duty to refrain from engaging in conduct that involves dishonesty or misrepresentation.

### "Mental State

"The Respondent engaged in intentional conduct: the Respondent intentionally recorded frivolous mortgages on the property of William Farris and Joseph Farris and the Respondent intentionally provided false information to the Hearing Panel.

### "Injury

"The Respondent's misconduct of obtaining the promissory note and recording the mortgages in favor of his law firm resulted in actual and potential injury. Joseph Farris and William Farris incurred costs of legal services to protect their property interests. Additionally, Joseph Farris and William Farris suffered the potential injury of losing their property to the fraudulent mortgages.

"By providing false or inconsistent information during these proceedings, the Respondent, again, has caused actual harm. The harm in this regard is the degradation of the integrity of the disciplinary process.

### "Aggravating or Mitigating Factors

"Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

"*Prior Disciplinary Offense.* The Respondent was previously disciplined by public censure in 1991. See *In re Roth*, 248 Kan. 194, 803 P.2d 1028 (1991). It is important to note that the misconduct in the previous discipline involved a misrepresentation and a false statement.

"*Dishonest Motive.* Respondent was less than candid in explaining his conduct in this matter. Additionally, recording mortgages in favor of his law firm for $20,000, when he had not earned such an amount is disingenuous.

"*Pattern of Misconduct.* Because the Respondent has a previous record of discipline, the Respondent has engaged in a pattern of misconduct.

"*Multiple Offenses.* Likewise, because the Respondent has a previous record of discipline, he has engaged in multiple offenses.

"*Bad Faith Obstruction of the Disciplinary Proceeding.* The Respondent's failure to provide an honest explanation for his conduct has resulted in the obstruction of the disciplinary proceeding.

"*Deceptive Practices During the Disciplinary Process.* Throughout the mediation of the probate action and this disciplinary investigation and prosecution, the Respondent has provided varying explanations for obtaining the note and mortgages from the executor of Albert Farris' estate. At the hearing, Mr. Berscheidt testified that the Respondent explained that the note and mortgages were simply to protect his fee. Information from Alvin Farris verified this version. However, . . . pleadings filed in the probate matter by the Respondent and the Respondent's testimony at the hearing included a variety of other reasons for the note and mortgages. As a result, the Hearing Panel finds that the Respondent was deceptive during the proceedings in providing these various explanations for his conduct.

"*Refusal to Acknowledge Wrongful Nature of Conduct.* At no time during the course of the hearing that spanned two days did the Respondent admit that what he did was wrong and in violation of the Kansas Rules of Professional Conduct. In fact, the Respondent maintains that the Disciplinary Administrator's office is acting in an arbitrary and capricious manner and that this disciplinary action should never have been brought against him.

"*Vulnerability of the Victims.* Alvin Farris, Joseph Farris, and William Farris were vulnerable victims. The Respondent counseled Alvin Farris that he should execute the promissory note and mortgages in favor of his law firm. Following that advice caused the executor to breach the fiduciary duties he owed to the heirs of Albert Farris. Additionally, Joseph Farris and William Farris were vulnerable in that neither party was aware of the cloud placed on their property until they retained an attorney who discovered the recorded mortgages.

"*Substantial Experience in the Practice of Law.* According to the Respondent's testimony, he was admitted to the bar in the State of Kansas in 1979. During the past 20 years, the Respondent has developed a general practice and has some experience with probate and real estate law.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. The Respondent present[ed]

to the Hearing Panel, in the form of Exhibit 19 which was admitted, under seal, without objection, some medical records. The Hearing Panel has read and reviewed the medical records.

"The hearing panel finds that the Respondent's prior disciplinary violation was remote. In 1991, the Respondent was publicly censured. That factor was considered by the Hearing Panel in reaching its recommendation.

"In reaching its recommendation for discipline, and in addition to considering Rule 3 of the Standards, the Hearing Panel has also considered Rule 4.53, which addresses competency, and Rules 7.2 and 7.3, which concern violations of duties owed to the legal profession. In the comments to Rule 4.53, it is noted that most courts impose reprimands on lawyers who are incompetent. Additionally, the comments to Rule 7.2 include a statement that reprimand is the appropriate sanction in most cases of a violation of a duty owed to the legal profession.

"While the Hearing Panel is mindful of the suggestions made in the comments to the Standards, the Hearing Panel is troubled by the Respondent's conduct in the context of this complaint. He has not shown remorse at any point in the proceedings. The Hearing Panel is further troubled by the Respondent's inconsistent explanations of his actions in this case. Under oath, he testified that the purpose of filing these mortgages was to prevent a fraudulent transfer in the estate. In rebuttal testimony, a witness noted that the Respondent stated to him that the purpose of filing the mortgages was to protect his fee, which he thought might be as high as $20,000. The Respondent did not attempt to rebut this testimony. The Respondent also testified that he knew that filing the mortgage was unnecessary. Thus, the filing had no basis other than to possibly protect the Respondent's fees. His client was the estate. Despite the fact that his client was the estate, and not Alvin Farris, individually or in his capacity as the executor, the Respondent let Alvin Farris' position in the family dispute influence his actions.

"The panel did not find any intent to harm on the part of Respondent in his actions. Had the Panel so found it would have recommended suspension. With particular reference to Standard 7.3 of the ABA Standards for Imposing Lawyer Sanctions, it is the recommendation of the Panel that the Respondent b[e] publicly censured."

The court, having considered the record, the report of the panel, the matters in aggravation and mitigation, and the recommendation of the panel, accepts and concurs in the findings, conclusions, and recommendations of the hearing panel with the exception of those matters noted in this opinion. Based upon the record and respondent's violations of KRPC 1.1 and KRPC 8.4 (d) and (g), we determine that respondent's violations warrant published censure.

IT IS THEREFORE ORDERED that Kent A. Roth be disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (1999 Kan. Ct. R. Annot. 210).

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs herein be assessed to the respondent.